[No. G031026. Fourth Dist., Div. Three. Mar. 8, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID RAMIREZ GOMEZ, Defendant and Appellant.

**COUNSEL**

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, David Delgado Rucci and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RYLAARSDAM, Acting P. J.**—After the trial court denied his motion to suppress, defendant David Ramirez Gomez pleaded guilty to conspiracy to commit a crime, sale or transportation of a controlled substance, and two counts of possession for sale of a controlled substance; he also admitted the related gang allegation. We note that the companion cases involving his two codefendants, Fernando Melendrez (*People v. Melendrez* (Mar. 8, 2004, G030674) [nonpub. opn.]) and Art Romo (*People v. Romo* (Mar. 8, 2004, G031085) [nonpub. opn.]), are also before us.

Defendant contends the court erred in denying his motion to suppress because his prolonged detention was unreasonable and constituted a de facto arrest without probable cause. He further argues that the court erred in failing to strike the hearsay testimony of two of the investigating officers, such error violated his constitutional right to confront the witnesses against him, and there was insufficient evidence of probable cause absent their testimony. We disagree and therefore affirm.

FACTS

The following facts relating to defendant's detention and arrest were derived from the evidentiary hearing on the motion to suppress evidence.

As part of an ongoing wiretap investigation involving different law enforcement agencies from several counties, Detective Johns learned that individuals being monitored planned to transfer a large quantity of cocaine from an address in Pomona using a silver Thunderbird with the numbers "829" as the last three digits on the license plates. A surveillance crew followed the Thunderbird to a residence in Fountain Valley, noting that the driver engaged in counter-surveillance activity along the way. The residence was kept under surveillance overnight.

The next morning, Detective Martinez and his team took over the task of keeping the residence under surveillance. Martinez learned from Johns that a vehicle believed to be carrying a large quantity of cocaine had been driven to the Fountain Valley residence the previous night. Throughout the day Martinez monitored all radio transmissions by the various team members. At least one person, referred to as the "eye," was in a position to watch the front of the residence; others were strategically located to cover surrounding points.

Around 1:00 p.m., the person designated as the eye relayed that a dark blue extended cab Chevy pickup had arrived at the residence with two male occupants. The two men met with a third male in the driveway. After a few minutes, all three men walked up the driveway toward the residence. Deputy Bartsch, seated in a helicopter overhead, observed them enter an unattached garage. Several minutes later, the driver of the blue vehicle backed it up the driveway toward the location of the garage; after about 10 minutes he drove the vehicle away.

Earlier that morning, Officer Floren of the Fountain Valley Police Department had agreed to assist the surveillance team in conducting traffic stops of vehicles departing from the residence. Once the blue vehicle departed, Martinez radioed Floren to stop the vehicle for any observable traffic violations and identify the driver. Floren pulled the vehicle over for a traffic offense and identified the driver as Melendrez. The officer discovered 14 kilogram-size packages of cocaine in a bag inside the vehicle and arrested Melendrez.

The next vehicle to arrive at the residence was described as "a dark green G.M.C. Suburban or utility vehicle" driven by a Hispanic male wearing a light blue T-shirt. After about 20 minutes, the driver of the green vehicle left the location in the company of another male later identified as defendant; they drove the route taken by Melendrez and then returned to the residence. The men removed a large cardboard box from the green vehicle and carried it up the driveway.

Around 25 minutes later, a two-tone brown Suburban was backed up toward the garage of the residence. Bartsch saw defendant and another male load several large boxes into the rear of the vehicle. Several minutes later, defendant entered the brown vehicle and drove away. Martinez radioed Floren to make a traffic stop of the brown vehicle and try to obtain the driver's permission to search it.

At 4:50 p.m., Floren advised Martinez that he had stopped the vehicle for a traffic violation but defendant refused to give his consent to conduct a search. Floren later testified that he pulled the vehicle over because defendant was not wearing a seatbelt. After approaching the driver's window, Floren noted that two small children in the backseat were not wearing seatbelts either. He also saw two large boxes that had been sealed with duct tape in the rear of the vehicle; the boxes were partially covered by a tarp and a ladder. Based on his experience, training, and the seizure of 14 kilogram-size packages of cocaine a few hours earlier, Floren was concerned the boxes contained illegal narcotics.

Floren advised defendant he was being detained due to an ongoing narcotics investigation. The children's mother was contacted, and they were released to her. Defendant refused to give his consent to have the vehicle searched, and Floren contacted Martinez to let him know that he believed the boxes in the vehicle contained illegal narcotics. Martinez advised Floren to detain defendant pending the issuance of a search warrant and to request a K-9 unit through the Fountain Valley Police Department to perform an exterior sniff search of the vehicle. Floren could not recall when he requested the K-9 unit, but if the K-9 officer's report stated 6:00 p.m., Floren testified, "That might be about right." When further asked if it was fair to say the K-9 unit did not respond until 6:30 p.m., Floren indicated that was "possible."

Sergeant Childe, the K-9 officer, testified that he received the request to respond to the scene at 6:00 p.m. and thereafter responded within five minutes. The drug detection dog alerted to the smell of narcotics in the rear portion of the vehicle by biting and scratching the rear bumper area. Thereafter, Floren lowered the rear window, opened one of the boxes, and saw tightly wrapped bricks of what appeared to be cocaine. Defendant was arrested, and his vehicle was impounded. He later pleaded guilty to possessing 262 kilograms of cocaine.

Prior to entering his guilty plea, defendant moved to suppress the evidence contending that his prolonged detention constituted an arrest without probable cause. During the hearing on the motion, which also addressed issues relating to codefendant Melendrez's arrest, numerous objections were made to the testifying officers' accounts of information relayed to them by other nontestifying officers during the investigation and surveillance. The court overruled

these objections and denied the motion after concluding defendant was subjected to an investigative detention, the length of which was for the purpose of securing the K-9 unit. The court further found there was sufficient probable cause to justify his prolonged detention.

## DISCUSSION

### The Prolonged Detention

Defendant contends the court erred in denying his motion to suppress because his prolonged detention was unreasonable and constituted a de facto arrest without probable cause. We agree the detention was unduly prolonged but conclude probable cause existed to support the de facto arrest.

"In reviewing the denial of [a motion to suppress evidence], we must view the record in the light most favorable to respondent [citation], uphold all express and implied factual findings of the trial court that are supported by substantial evidence, then independently apply the proper federal constitutional standards to those facts [citations]." (*People v. Valenzuela* (1999) 74 Cal.App.4th 1202, 1206–1207 [88 Cal.Rptr.2d 707].) " '[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power . . . .' [Citations.]" (*In re Arturo D.* (2002) 27 Cal.4th 60, 77 [115 Cal.Rptr.2d 581, 38 P.3d 433].)

■ Stopping defendant's vehicle for a seatbelt violation, even if done as a pretext for the narcotics investigation, was entirely legal. (*Arkansas v. Sullivan* (2001) 532 U.S. 769, 771–772 [149 L.Ed.2d 994, 121 S.Ct. 1876]; *Whren v. United States* (1996) 517 U.S. 806, 812–813 [135 L.Ed.2d 89, 116 S.Ct. 1769]; *People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1557, fn. 1 [70 Cal.Rptr.2d 341].) But as defendant argues, the length of his detention extended far beyond the 15 minutes Floren testified would have been needed to prepare a traffic citation. The record shows Floren advised Martinez that he had detained defendant at 4:50 p.m. The K-9 unit was dispatched to the scene at 6:00 p.m. According to Childe, he got there five minutes later, but Floren agreed it was possible Childe and the drug detection dog did not arrive until 6:30 p.m. Either way, it appears defendant was detained for well over an hour before the K-9 unit was even requested. And the record is devoid of evidence to explain the reason for the delay in making the request.

■ There is no fixed time limit for establishing the constitutionality of an investigatory detention. Rather, such a detention will be deemed unconstitutional "when extended beyond what is reasonably necessary under the circumstances that made its initiation permissible. [Citation.]" (*People v.*

*Russell* (2000) 81 Cal.App.4th 96, 101 [96 Cal.Rptr.2d 568].) The issue then "is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly. [Citations.]" (*Id.* at p. 102.) Here, the record does not show the requisite diligence to justify the prolonged detention.

■ A detention that is unreasonably prolonged amounts to a de facto arrest that must be supported by probable cause to be constitutionally valid. (*Dunaway v. New York* (1979) 442 U.S. 200, 212 [60 L.Ed.2d 824, 99 S.Ct. 2248].) The probable cause requirement was met in this case based on the collective knowledge of the officers participating in the investigation which led to defendant's detention. "[O]fficers can make arrests based on information and probable cause furnished by other officers." (*People v. Ramirez, supra,* 59 Cal.App.4th at p. 1553.) And "when police officers work together to build 'collective knowledge' . . . , the important question is not what each officer knew . . . , but how valid and reasonable the probable cause was that developed in the officers' collective knowledge." (*Id.* at p. 1555.)

Based on information received from the wiretap investigation, a car believed to be carrying large quantities of cocaine was followed to the Fountain Valley residence the night before defendant's arrest. The next day, Melendrez arrived at the residence and was seen entering the garage with defendant. Melendrez then backed his truck up the driveway toward the garage and left soon thereafter. He was detained a few minutes later, and Floren discovered 14 kilogram-size packages of cocaine in his vehicle. A second vehicle arrived at the residence shortly after Melendrez departed. The driver of the second vehicle and defendant briefly left and drove the route Melendrez had taken. After returning to the residence, the two men removed a heavy box from the second vehicle. A little later defendant was seen placing large boxes in his vehicle; he then drove away from the residence employing counter-surveillance driving techniques. Taken together, these facts constituted probable cause to believe defendant was engaged in drug trafficking.

■ Alternatively, in light of *Atwater v. City of Lago Vista* (2001) 532 U.S. 318 [149 L.Ed.2d 549, 121 S.Ct. 1536], the seatbelt violation that led to the initial detention also supplied probable cause for defendant's de facto arrest. In *Atwater,* the Supreme Court held that an officer who "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence . . . may, without violating the Fourth Amendment, arrest the offender." (*Atwater v. City of Lago Vista, supra,* 532 U.S. at p. 354 [warrantless arrest of motorist jailed for committing seatbelt and other minor traffic offenses was not unconstitutional].) The California Supreme Court recently held that *Atwater* foreclosed a defendant from challenging a custodial arrest on Fourth Amendment grounds following a valid traffic stop.

(*People v. McKay* (2002) 27 Cal.4th 601, 607 [117 Cal.Rptr.2d 236, 41 P.3d 59] ["there is nothing inherently unconstitutional about effecting a custodial arrest for a fine-only offense"].)

Defendant attempts to distinguish the facts here from the holdings in *Atwater* and *McKay*, contending he was not cited for the seatbelt violation and could not be arrested for such under state law. In support of this argument, defendant relies on *U.S. v. Johnson* (N.D.Ill. 2003) 257 F.Supp.2d 1142. In *Johnson*, the vehicle occupants were detained and searched after an officer allegedly observed packets of marijuana in plain view on the floor-board of the vehicle next to the driver's feet. After finding the officer's testimony was not credible, the court refused to consider a hypothetical arrest for illegal parking. In doing so, the court distinguished *Atwater* on the basis that such traffic law violations "do *not* ordinarily give rise to such arrest-and-search conduct . . . ." (*Id.* at p. 1146.)

We do not find *Johnson* to be persuasive. As the court concluded in *McKay*, "the Fourth Amendment inquiry does not depend on whether the challenged police conduct was authorized by state law." (*People v. McKay, supra*, 27 Cal.4th at p. 610, calling into doubt *People v. McGaughran* (1979) 25 Cal.3d 577, 586–587 [159 Cal.Rptr. 191, 601 P.2d 207] [extended detention exceeded constitutional limits where state law did not authorize custodial arrest for minor traffic violation].) Thus, it is irrelevant that a seatbelt violation typically would result in a brief detention for purposes of issuing a citation.

Our sole concern is whether defendant's Fourth Amendment rights were violated by being subjected to a de facto arrest that originated with the traffic stop. "Probable cause to arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1037 [99 Cal.Rptr.2d 1, 5 P.3d 68].) It is undisputed Floren had probable cause to believe defendant violated a traffic law. He thus had probable cause to arrest defendant on that basis. That probable cause did not evaporate simply because Floren also detained defendant for purposes relating to the narcotics investigation.

■ Absent a Fourth Amendment violation, the evidence obtained as a result of the de facto arrest may not be suppressed. (*People v. McKay, supra*, 27 Cal.4th at p. 608 [noting the passage of Proposition 8 precludes courts from excluding evidence "merely because it was obtained in violation of some state statute"].) ■ Because both the traffic stop and collective knowledge of the investigating officers supplied probable cause not only to

detain but also to arrest defendant, his Fourth Amendment rights were not violated by the prolonged detention caused by the delay in requesting the K-9 unit.

## The Harvey/Madden Objections

Defendant argues that the court erred in failing to strike the hearsay testimony of Detectives Martinez and Johns because they merely repeated information relayed to them by other officers during the surveillance and investigation and such error violated his constitutional right to confront the witnesses against him. The Attorney General contends the court properly overruled defendant's objections asserting that police officers may rely on the "collective knowledge" of other officers involved in an investigation to establish probable cause for an arrest. We agree the trial court properly overruled defendant's objections.

Throughout the hearing on the motion to suppress, defendant and co-defendant Melendrez raised numerous "*Harvey/Madden*" objections. The objections related to an evidentiary rule drawn from *People v. Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689] and *People v. Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971], that "govern[s] the manner in which the prosecution may prove the underlying grounds for arrest when the authority to arrest has been transmitted to the arresting officer through police channels. [Citation.]" (*People v. Collins* (1997) 59 Cal.App.4th 988, 993 [69 Cal.Rptr.2d 544].)

It is well settled under California law that an officer may arrest an individual on the basis of information and probable cause supplied by another officer. (*People v. Ramirez, supra,* 59 Cal.App.4th 1548, 1553.) "[H]owever, . . . when the first officer passes off information through 'official channels' that leads to arrest, the officer must also show basis for his probable cause. In other words, the so-called 'Harvey-Madden' rule requires the basis for the first officer's probable cause must be 'something other than the imagination of an officer who does not become a witness.' [Citation.]" (*Ibid.*)

Probable cause for a search or an arrest without a warrant may be proven by information passed from one officer to another if it is shown the information was " ' "factual rather than conclusionary," related "specific and articulable facts," was the product of personal observations by the informing officer, and was reliable.' [Citations.]" (*People v. Ramirez, supra,* 59 Cal.App.4th at p. 1554.) Ultimately, the issue boils down to whether the latter officer's reliance on the information was reasonable. (*Ibid.*)

Here, probable cause for an investigatory detention was based on a combination of information, some of which was supplied to Floren by

Martinez, and some of which stemmed from Floren's own experience and training relating to narcotics enforcement along with the seizure of 14 kilogram-size packages of cocaine from codefendant Melendrez's vehicle just a few hours earlier. Martinez testified that the information he provided to Floren was relayed to him based on the personal observations of one of the surveillance officers, i.e., the description of defendant and his vehicle, as well as the fact defendant and another male had been seen placing large boxes in the vehicle shortly before it departed. Martinez also testified about observations of other activity at the residence that, taken together with Johns's testimony regarding the wiretap investigation and surveillance of the silver Thunderbird that led them to the Fountain Valley residence, raised a reasonable suspicion that defendant and others seen at the residence that day were involved in illegal narcotics trafficking.

■ "[W]hen police officers work together to build 'collective knowledge' of probable cause, the important question is not what each officer knew about probable cause, but how valid and reasonable the probable cause was that developed in the officers' collective knowledge." (*People v. Ramirez, supra,* 59 Cal.App.4th at p. 1555.) There is no requirement that the officer whose personal observations were relied upon for purposes of the probable cause determination actually testify to his or her observations. To the contrary, the *Harvey/Madden* rule merely precludes the prosecution from relying on hearsay information communicated to the arresting officer that is not sufficiently specific and fact based to be considered reliable. Here, because the prosecution adequately demonstrated the reliability of the information derived from the wiretap investigation and related surveillance, the court properly overruled defendant's objections.

Defendant further argues that the court's ruling violated his confrontation rights. Not so. The hearsay evidence was properly admitted at the hearing. Moreover, there was nothing to preclude defendant from calling the nontestifying officers as witnesses during the hearing for purposes of cross-examining them. (Evid. Code, § 1203, subd. (a).) Having rejected defendant's contention that Martinez's and Johns's testimony should have been excluded, his argument that there was insufficient evidence of probable cause absent their testimony is deemed meritless.

We further note the hearsay involved in the *Harvey/Madden* rule is not affected by the Supreme Court's recent decision in *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.E.2d 177, 124 S.Ct. 1354]. In *Crawford*, the Supreme Court overruled *Ohio v. Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531], which previously allowed out-of-court statements to be admitted at trial upon a showing of some indicia of reliability. (*Crawford v. Washington, supra,* 541 U.S. at pp. 38–46 [124 S.Ct. at pp. 1369–1371].) Notably, the issue in

*Crawford* involved the admissibility of "testimonial hearsay" at the defendant's trial in violation of his Sixth Amendment right to confront his accusers. (*Crawford v. Washington, supra,* 541 U.S. at p. 53 [124 S.Ct. at p. 1374] ["testimonial hearsay" includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations"].) The testimony at issue here did not implicate this right. Consequently, *Crawford* does not apply.

## DISPOSITION

The judgment is affirmed.

Fybel, J., and Ikola, J., concurred.

A petition for a rehearing was denied April 6, 2004, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 9, 2004.