[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 138 
OPINION
After the magistrate denied his motion to suppress evidence, defendant Jasper Dwight Branner pled no contest to possession of cocaine base for sale and admitted a prior conviction in exchange for dismissal of the remaining two counts and enhancement allegations. The trial court imposed the low term with additional years for the prior conviction for a total of six years in state prison.
On appeal, defendant contends the magistrate erroneously denied his suppression motion. Finding no error, we affirm.
 FACTUAL AND PROCEDURAL BACKGROUND
In November 2004, Sergeant Kenneth Georges of the Sacramento County Sheriffs Department was watching an apartment complex on Howe Avenue because of complaints regarding narcotics sales in its parking lot. On November 27, 2004, Sergeant Georges saw a Jeep and ran a records check on the license number. From this check, he learned defendant was the registered owner. Sergeant Georges then ran a records check on defendant and learned defendant was required by law to report his residence to local law enforcement because of a prior narcotics conviction. Sergeant Georges did not know if defendant was at the apartment complex that night.
The next month, Sergeant Georges watched the complex again with several officers, including Detective Jeff Spackman, because there were still complaints about narcotics sales. On December 17, 2004, Sergeant Georges and Detective Spackman were both wearing plain clothes and driving an unmarked car. Because they could not find a suitable parking space when they first drove into the parking lot, they exited to reenter the lot to look again.
As they turned back into the parking lot, they saw the same Jeep from the previous surveillance "start to pull in front of [them and] go into the complex." They followed the Jeep, which stopped at the northwest corner of the complex near a laundry room for approximately 10 minutes. At one point while it was stopped, the officers saw all of the Jeep's passengers get out. Eventually, three people returned to the Jeep, including defendant, who was the driver. The defendant drove east through the parking lot and turned south, passing the officers. At this time, the officers saw the rear license plate light was not working and one of the headlights was misaligned so it would light the ground four to five feet in front of the Jeep.
After defendant passed the officers in the Jeep, "[i]t continued southbound and then made a left-hand rum around the comer of the apartment complex to *Page 140 
head east out to Howe Avenue." When the officers followed and began turning to leave the parking lot onto Howe Avenue, they saw the Jeep had pulled over with a passenger door open, and a man was urinating on a wall inside the complex less than 10 feet from the Jeep. The officers approached the Jeep while it was still inside the parking lot.
While Sergeant Georges contacted the man urinating on the wall, Detective Spackman approached defendant and identified himself. Detective Spackman "explained what was going on" and asked defendant and the other passenger if they were on probation or parole or had any outstanding warrants; they said no. When Detective Spackman asked for identification, defendant produced a driver's license and the other passenger produced a California ID card. The male who urinated was placed in the car of another officer who had just arrived. Ultimately, the officers gave the man a warning.
Detective Spackman went to his car and called the records division to determine if defendant and the other passenger were on probation or parole or had any outstanding warrants. The records check took "probably less than five minutes." During this records check, Sergeant Georges began asking defendant and the other passenger if they were on probation or parole, "basic questions of that nature."
As a result of the records check, Detective Spackman learned defendant was listed as a "[Health and Safety Code section]11590 registrant" and learned his last registered address. He relayed these results to Sergeant Georges. Sergeant Georges, then roughly 10 minutes into what was ultimately a 15-minute conversation with defendant, asked him about his residence. Defendant responded he had not lived at his last registered address for at least eight months. Consequently, Sergeant Georges told defendant he was under arrest for not registering his address. He took the other passenger out of the Jeep and, with another deputy's help, searched it. The parties stipulated the officers' search of the Jeep produced cocaine base and a gun. No officer wrote a citation for the traffic offenses that night.
 DISCUSSION
Defendant contends the magistrate erred in not suppressing evidence the officers acquired when they detained him. We disagree.
 I Standard of Review
"In reviewing the trial court's ruling on the suppression motion, we uphold any factual finding, express or implied, that is supported by substantial *Page 141 
evidence, but we independently assess, as a matter of law, whether the challenged search or seizure conforms to constitutional standards of reasonableness." (People v.Hughes (2002) 27 Cal.4th 287, 327 [116 Cal.Rptr.2d 401,39 P.3d 432].)
 II Defendant Was Lawfully Detained in the Parking Lot for Traffic Violations
Because the People concede defendant was detained, we first address defendant's assertion that the detention was unlawful because the officers did not have the requisite suspicion that he committed traffic violations on a highway. "[T]o justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place . . ., and (2) the person he intends to stop or detain is involved in that activity." (In re TonyC. (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366,582 P.2d 957].) The officer must have been objectively reasonable in entertaining such a suspicion. (People v. Perrusquia
(2007) 150 Cal.App.4th 228, 233 [58 Cal.Rptr.3d 485].)
Here, Sergeant Georges and Detective Spackman had specific and articulable facts to suspect defendant committed traffic violations on a highway because the rear license plate on his Jeep was not illuminated (Veh. Code, §§ 24252, subd. (a), 24601) and one of the headlights was out of alignment (id., § 24409). Although they detained defendant in the parking lot, which is not a "highway" under the Vehicle Code (see id., §§ 21001, 360), Detective Spackman testified that when they were waiting to turn into the complex, they saw the Jeep "start to pull in front of [them and] go into the complex." The officers saw the Jeep with its lighting malfunctions when it passed them roughly five to 10 minutes after entering the complex.
From these facts, the officers could have reasonably suspected two lights on opposite ends of the Jeep did not begin malfunctioning within that short amount of time. At the very least, the officers could have reasonably suspected that at least one of the lighting malfunctions occurred while the Jeep was on Howe Avenue. Accordingly, they had a valid basis to detain defendant in the parking lot. *Page 142 
 III The Police Validly Ran a Check on Defendant's Driver's License Because They Had Probable Cause for a Custodial Arrest
Defendant next contends his detention was unduly prolonged. We disagree.
An investigatory detention is unconstitutional if it is "`extended beyond what is reasonably necessary under the circumstances [that] made its initiation permissible.'" (People v. McGaughran (1979) 25 Cal.3d 577, 586
[159 Cal.Rptr. 191, 601 P.2d 207].) "A detention that is unreasonably prolonged amounts to a de facto arrest that must be supported by probable cause to be constitutionally valid." (People v.Gomez (2004) 117 Cal.App.4th 531, 538
[12 Cal.Rptr.3d 398].) (4) "Probable cause to arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime." (People v. Kraft
(2000) 23 Cal.4th 978, 1037 [99 Cal.Rptr.2d 1, 5 P.3d 68].)
Furthermore, if a law enforcement officer has probable cause to believe a person has committed even a very minor criminal offense in his presence, the officer may, without violating theFourth Amendment, effect a custodial arrest of that person. (See Atwater v. Lago Vista (2001) 532 U.S. 318, 354
[149 L.Ed.2d 549, 577, 121 S.Ct. 1536].) "[T]here is nothing inherently unconstitutional about effecting a custodial arrest for a fine-only offense." (People v. McKay (2002)27 Cal.4th 601, 607 [117 Cal.Rptr.2d 236, 41 P.3d 59] [riding a bicycle in the wrong direction in violation of the Veh. Code].)
Here, Sergeant Georges and Detective Spackman had probable cause to believe defendant violated the Vehicle Code because they saw him driving in the parking lot minutes after following him from Howe Avenue. (In re Tony C, supra,21 Cal.3d at p. 893.) Thus, under Atwater these violations also provided probable cause to effect a custodial arrest. (People v. Gomez, supra,117 Cal.App.4th at pp. 538-539.) Stopping his Jeep for Vehicle Code violations, even if done as a pretext to investigate some other unlawful conduct, was legally justified. (Id. at p. 537, citing Whrenv. United States (1996) 517 U.S. 806, 812-813
[135 L.Ed.2d 89, 97-98, 116 S.Ct. 1769].)
Defendant's assertion that he was not subject to acustodial arrest, while correct (see Pen. Code, § 853.5, subd. (a)), is nonetheless irrelevant becausestate arrest procedures are not a part of our inquiry in determining whether the Fourth Amendment has been violated. (People v. McKay, supra, 27 Cal.4th at p. 605.) Indeed, Atwater forecloses defendant from challenging *Page 143 
his custodial arrest on Fourth Amendment grounds after a valid traffic stop. (People v. Gomez, supra,117 Cal.App.4th at pp. 538-539.)
Because defendant heavily relies on People v.McGaughran, a closer look into the case is warranted. InMcGaughran, a police officer on patrol saw the defendant driving in the wrong direction on a one-way public street and stopped him. The officer explained why he pulled the defendant over and asked for identification; the defendant produced his driver's license. (People v. McGaughran,supra, 25 Cal.3d at p. 581.) A discussion ensued for the next three to four minutes, including the defendant's explanation that he was lost. (Ibid.) The officer returned to his patrol car and began a radio check for outstanding arrest warrants in the defendant's name. Roughly 10 minutes later the dispatcher reported a warrant for the defendant. (Ibid.) The officer called for assistance and requested a confirmation of the warrant. It was confirmed by radio 20 to 25 minutes later, and the defendant was arrested. (Ibid.)
In its analysis, the court concluded the 10-minute detention was unconstitutional based on both the Vehicle Code and theFourth Amendment. (People v. McGaughran, supra,25 Cal.3d at pp. 586-587.) The Vehicle Code required the officer to release the defendant from custody after giving a written promise to appear. (Ibid.) For the Fourth Amendment rationale, the court reasoned all that was reasonably necessary was for the officer to examine the defendant's license and registration, explain the violation, and either give a citation or a warning; thus, the additional 10-minute detention for the warrant check was not reasonably necessary for "that process." (McGaughran, at p. 587.)
The reasoning in McGaughran reveals why the case conflicts with the current state of the law. First, theMcGaughran court clarified it was not addressing those traffic offenses "for which the officer is either required or authorized to take the defendant into custody and transport him . . . for the filing of a complaint." (People v.McGaughran, supra, 25 Cal.3d at p. 583.) Further, in framing the issue, the court relied on the fact that the defendant could not be arrested for that particular Vehicle Code violation, stating "the issue is whether a police officer who (1) has stopped a motorist for a traffic violation for which the latter cannot be taken into custody and (2) has already detained the offender for the period necessary to perform his functions arising from the violation, can thereafter lawfully detain him for an additional period of time solely for the purpose of conducting a warrant check." (Id. at p. 586, italics added.)
Defendant's reliance on McGaughran is misplaced. Defendant cites McGaughran for the principle that "a driver cannot be detained beyond the *Page 144 
time needed to deal with the traffic offense. [¶] [I]f the officer delays the completion of his duties [incurred by virtue of the traffic stop] to await the response to his warrant inquiry, and the additional period of detention is not `reasonably necessary' to the process of dealing with the initial offense, the rule permitting such checks is inoperative and the delay will be unconstitutional."
Although we are bound by a decision from the California Supreme Court (People v. Haynes (1998) 61 Cal.App.4th 1282,1298 [72 Cal.Rptr.2d 143]), we must read McGaughran in light of subsequent changes in the law. First, article I, former section 28(d)[1] of the California Constitution was amended into the law by Proposition 8, which was adopted by voters three years after McGaughran, eliminated "`a judicially created remedy for violations of the search and seizure provisions of the . . . state Constitution[], through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled.'" (People v. McKay,supra, 27 Cal.4th at p. 605, italics omitted.) Thus, when analyzing the admissibility of evidence under theFourth Amendment, we cannot impose stricter standards than those of the United States Supreme Court. (People v. Banks (1993)6 Cal.4th 926, 934 [25 Cal.Rptr.2d 524, 863 P.2d 769].) Second, the United States Supreme Court's holding in Atwater
now allows law enforcement officers to effect a custodial arrest for a fine-only traffic offense without violating theFourth Amendment. (Atwater v. Lago Vista, supra,532 U.S. at p. 323 [149 L.Ed.2d at p. 558].) (9) Third, the California Supreme Court's holding in McKay, which relied onAtwater, clarified that the constitutionality of a custodial arrest does not depend on state procedures that the federal Constitution does not compel. (People v. McKay,supra, 27 Cal.4th at p. 614.)
Defendant contends Atwater and McKay do not affect the outcome here because the police did not effect a custodial arrest — and, in fact, could not have effected a custodial arrest — under state law. Gomez, which defendant ignores, clarified that the permissibility of a custodial arrest under state law has no bearing on whether there was a Fourth Amendment violation. (People v. Gomez,supra, 117 Cal.App.4th at p. 539, citing People v.McKay, supra, 27 Cal.4th at p. 610.) Gomez also explained that where law enforcement officers have probable cause for a custodial arrest, even for a minor infraction, then a prolonged detention does not violate the Fourth Amendment, even if the detention is used for investigatory purposes unrelated to the crime for which they have probable cause to effect the custodial arrest. (Gomez, at pp. 539-540.) *Page 145 
Gomez provides the answer here: if the law enforcement officers had probable cause to believe defendant committed traffic infractions, then detaining him longer than necessary to simply cite him did not violate the Fourth Amendment. (People v. Gomez, supra,117 Cal.App.4th at pp. 539-540.) To the extent McGaughran conflicts with this principle, we believe it is no longer good law. Thus, the magistrate did not err in denying the suppression motion.
 DISPOSITION
The judgment is affirmed.
Scotland, P. J., and Nicholson, J., concurred.
[1] Article I, section 28(d), is now article I, section 28(f)(2) because of further amendments to the California Constitution by Proposition 9 in 2008. *Page 146