Filed 2/28/14  P. v. Langin CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F066242 |
| v. | (Super. Ct. No. BF139858A) |
| ASHLEE DEANNA LANGIN, | **O P I N I O N** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Jyoti Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Kathleen A. McKenna, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Cornell, Acting P.J., Detjen, J., and Peña, J.

Following the denial of her motion to suppress evidence (Pen. Code, § 1538.5), appellant, Ashlee Deanna Langin, pleaded no contest to possession of a controlled substance for purposes of sale (Health & Saf. Code, § 11378). The court suspended imposition of sentence, placed appellant on three years' probation, and ordered that she serve 180 days in county jail.

On appeal, appellant's sole contention is that the court erred in denying her suppression motion. We affirm.

### FACTS

In the latter part of 2011, City of Tehachapi Police Officer Jason Dunham, then assigned to the Kern County Narcotics Enforcement Team, "received some vague information that [appellant] may be transporting narcotics from the Los Angeles County area to … California City."[1] Dunham learned where appellant lived and, while subsequently conducting a surveillance of her apartment, learned she had two vehicles, including a Honda Accord. The officer "placed a GPS tracker underneath the [Honda]" while the car was parked in a parking lot near her apartment that was "open to the public," but when after 50 days he had not been able to "develop … probable cause to stop [appellant]," he "decided to conduct conventional surveillance of [appellant] while she was operating the vehicle."

On the evening of December 19, 2011, Dunham, driving an undercover vehicle, observed the following: Appellant drove from a bank in Mojave to the "AV Fly Away," a "kind of … ride-share location" where people can park and arrange transportation to Los Angeles. She parked, and after she had been sitting in her car for "quite an amount

---

[1] Our factual summary is taken from Dunham's testimony at the October 5, 2012, hearing on the suppression motion. Dunham was the sole witness at the hearing.

of time," another car pulled up and parked next to appellant's car. A female got out, got into appellant's car, remained for approximately two to three minutes, and then got out.

Dunham could not see what was "going on" in the car, but based on his training and experience, he formed the opinion that it was "likely" appellant and the other female were engaging in a "narcotics transaction."

Dunham further observed the following: After the female with whom appellant had met got out of appellant's car, appellant drove to the Antelope Valley Mall where she "remained for a short period of time" before driving to a fast-food restaurant. She left the restaurant shortly thereafter and drove north toward Kern County.

At that point, Dunham contacted Kern County Deputy Sheriff Sean Mountjoy, "briefly explained" the investigation he was conducting, and asked Mountjoy to "conduct a traffic stop" on appellant if she drove through the area he patrolled. Thereafter, as Dunham continued to follow appellant, Mountjoy, at approximately 8:30 p.m. to 9:00 p.m., stopped appellant for having a taillight or license plate light out. It was dark at the time.[2]

When Dunham arrived on the scene, appellant was "being detained" outside the car. Dunham told appellant he had been watching her and he believed "she had met with somebody for a narcotics transaction." He further explained that if she did not consent to a search of the car, a police dog could come to their location, and if the dog "alerted to the vehicle," the car would be searched. Appellant refused to consent to a search. Shortly thereafter, Mountjoy contacted a Los Angeles County Sheriff's Department detective, who arrived on the scene approximately one hour later with a police dog. At

---

[2]    Driving during darkness without a light that illuminates the rear license plate so as to make the plate visible from a distance of 50 feet is a violation of Vehicle Code section 24601. Driving with a nonfunctioning taillight is a violation of Vehicle Code section 24252.

that point, a "dog sniff was conducted," the dog "alert[ed]" to the car, "the vehicle was opened," and "drugs were found."

## DISCUSSION

"The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the right to be free of unreasonable searches and seizures." (*People v. Gallegos* (2002) 96 Cal.App.4th 612, 622.) A "brief investigative stop[]" of a person, commonly referred to in the case law as a detention, is a seizure within the meaning of the Fourth Amendment. (*People v. Souza* (1994) 9 Cal.4th 224, 229.) A detention is justified if, at its inception, the officer had "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." (*California v. Hodari D.* (1991) 499 U.S. 621, 636, fn. 10.) Appellant contends "[her] 60-minute detention … was unconstitutional because it exceeded the time needed for the officers to cite her for a broken license plate light," and therefore evidence found in the search of her car should have been suppressed.

Appellant bases her argument on *People v. McGaughran* (1979) 25 Cal.3d 577 (*McGaughran*). In that case, police stopped a driver for traveling in the wrong direction on a one-way public street. The officer explained the reason for the stop and examined the licenses of the driver and passenger, who told him they were lost. (*Id.* at p. 581.) After a discussion with the car's two occupants lasting three to four minutes, the officer returned to his patrol vehicle and initiated a radio check for outstanding warrants in both names. About 10 minutes later, the dispatcher notified the officer of outstanding warrants. (*Ibid.*) The California Supreme Court held that prolonging the detention beyond the time necessary for the officer to perform his functions arising out of the traffic violation was unlawful because it ran afoul of both the Fourth Amendment and a California statute requiring immediate release of a traffic offender who gives his written promise to appear. (*McGaughran*, at pp. 586-587.) Appellant argues that subjecting her

4

to an approximately one-hour wait for the arrival of the police dog to aid the officers in an investigation unrelated to the Vehicle Code violation, which provided the justification for the stop, was similarly constitutionally unreasonable. We disagree. As we explain below, due to subsequent developments in Fourth Amendment jurisprudence, neither of the rationales relied upon by the *McGaughran* court remains viable.

First, in 1982, three years after *McGaughran*, California's voters added a provision to our state Constitution that precludes suppression of relevant evidence in a criminal case unless compelled by federal law. (See *People v. McKay* (2002) 27 Cal.4th 601, 605 (*McKay*).) Second, the United States Supreme Court subsequently held in *Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354 (*Atwater*) that an officer may, without violating the Fourth Amendment, arrest a person who the officer has probable cause to believe has committed "even a very minor criminal offense," such as a Vehicle Code violation. And third, the California Supreme Court decided *McKay*. In that case, a bicyclist who was stopped for riding in the wrong direction on a residential street—an infraction—and stated his name and date of birth but could not produce any identification, was taken into custody and searched incident to arrest. Methamphetamine was found. (*McKay*, at p. 606.) He moved to suppress the evidence on the ground that the officer lacked the statutory authority to effect a custodial arrest. (*Id*. at pp. 606-607.) Our Supreme Court held the contention was "foreclosed by" *Atwater*. (*Id*. at p. 607.)

As *McKay* explained, it was immaterial whether the bicyclist's arrest violated California statutes: "With the passage of Proposition 8, [courts] are not free to exclude evidence merely because it was obtained in violation of some state statute or state constitutional provision." (*McKay*, *supra*, 27 Cal.4th at pp. 607-608.) This is so because the United States Supreme Court "has repeatedly emphasized that the Fourth Amendment inquiry does not depend on whether the challenged police conduct was authorized by state law." (*Id*. at p. 610.) Because, under *Atwater*, the bicyclist's custodial arrest for the

5

minor traffic violation did not violate the federal Constitution, neither did the ensuing search incident to the arrest. (*McKay*, at pp. 605, 618.)

In *People v. Gomez* (2004) 117 Cal.App.4th 531 (*Gomez*), the court applied *McKay* and *Atwater* to circumstances similar to those present in the instant case. In *Gomez*, a police officer (first officer) stopped a car for a "traffic violation," upon the request of another officer who had observed the car under circumstances that suggested to him the car was involved in illegal narcotics trafficking. (*Gomez*, at p. 536.) The first officer, upon stopping the car, observed in the back seat a package he believed, based on his training, experience and knowledge of earlier events, contained illegal narcotics. The officer advised defendant Gomez, the driver of the car, that he (Gomez) "was being detained due to an ongoing narcotics investigation." (*Ibid.*) When Gomez refused to consent to a search of the car, the officer requested a K-9 unit. Another officer arrived on the scene with a drug detection dog "well over an hour" later (*id.* at p. 537), the dog alerted to "the smell of narcotics in the rear portion of the [car]," and a subsequent search of the car revealed a box containing bricks of cocaine (*id.* at p. 536). Gomez later pleaded guilty to possession of cocaine, but prior to entering his plea, he moved to suppress the contraband seized.

In upholding the trial court's denial of that motion, the appellate court held that although Gomez's detention was unreasonably prolonged, thereby transforming the detention into a de facto arrest, the arrest was supported by probable cause that appellant was engaged in drug trafficking. (*Gomez*, *supra*, 117 Cal.App.4th at pp. 537-538.)

"Alternatively," in the portion of the opinion relevant to the instant case, the court upheld the denial of Gomez's suppression motion on the following basis: "[I]n light of *Atwater*, … the seatbelt violation that led to the initial detention also supplied probable cause for defendant's de facto arrest'; in *McKay*, "[t]he California Supreme Court … held that *Atwater* foreclosed a defendant from challenging a custodial arrest on Fourth

6

Amendment grounds following a valid traffic stop"; and "[a]bsent a Fourth Amendment violation, the evidence obtained as a result of the de facto arrest may not be suppressed." (*Gomez*, *supra*, 117 Cal.App.4th at pp. 538-539.) Thus, "[b]ecause … the traffic stop … supplied probable cause not only to detain but also to arrest defendant, his Fourth Amendment rights were not violated by the prolonged detention caused by the delay in requesting the K-9 unit." (*Id*. at pp. 539-540.) Here too, because probable cause to arrest appellant for a traffic violation existed, the detention of over an hour while the officers obtained the help of a drug detection dog did not violate appellant's Fourth Amendment rights.

Appellant argues that *Gomez* does not advance respondent's cause because (1) the relevant portion of *Gomez*—its "'alternative' holding"—is dicta, and (2) *Gomez* "improperly extended the reasoning of *McKay*" because, in *McKay*, the defendant was taken into custody for a traffic violation (*McKay*, *supra*, 27 Cal.4th at p. 606), whereas, in *Gomez*, "there clearly was never an actual arrest or intent to arrest for a violation of Vehicle Code section 24601." These points, in our view, are not well taken.

*McKay* teaches that where there exists probable cause to arrest a person for even a minor offense, a search incident to that arrest does not violate the Fourth Amendment. Whether the officer arrests the suspect for the conduct which provides the initial justification for the detention, or whether the officer ever intends to arrest the suspect for that conduct, is of no moment in determining the validity of the search. This is so because the validity of the search turns on the validity of the arrest, which in turns depends on whether there exists probable cause to arrest, and that determination turns not on the officer's intentions, but on an objective analysis of information available to the arresting officer. (Cf. *Whren v. United States* (1996) 517 U.S. 806, 813 ["Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"].) Thus, it is not an "unwarranted extension" of *McKay* to apply that case to a situation such as

7

existed in *Gomez* and in the instant case, where even though the reason for prolonging the detention had nothing to do with the Vehicle Code violation that provided the initial justification for the traffic stop, the traffic stop was supported by probable cause. Regardless of whether the *Gomez* discussion of *Atwater* and *McKay* is dicta, we find it to be well reasoned, and as demonstrated above, *Gomez* supports our conclusion that there was no Fourth Amendment violation in the instant case.

Appellant also argues that *Atwater* provides no support for upholding the search here because, in that case, the suspect also was stopped and taken into custody *for a traffic offense*. Appellant attempts to distinguish the instant case on the basis that here, she asserts, the evidence adduced at the hearing suggests the officers concluded there did not exist probable cause to believe appellant had committed a traffic offense. This argument too lacks merit. We reiterate that the officers' subjective beliefs and intentions have no bearing on the probable cause analysis.

Finally, if appellant means to argue that, in fact, when viewed objectively, the information available to the officers did not establish probable cause that appellant had committed a Vehicle Code violation, that argument also fails. In reviewing a trial court's ruling on a motion to suppress, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) Here, Dunham, when asked if he knew "the justification for the actual traffic stop," testified, "[t]here was, I believe, a taillight that was out or a license plate light that was out." Under the principles of judicial review set forth above, we conclude Dunham's testimony was sufficient to establish that an officer observed a Vehicle Code violation.[3] Therefore,

---

**3** It is reasonably inferable that this testimony was based on what Mountjoy told Dunham, and was therefore based on hearsay (Evid. Code, § 1200). However, there was

8

as demonstrated above, there existed probable cause to arrest appellant, and the search incident to that arrest did not violate appellant's Fourth Amendment rights. The court did not err in denying appellant's suppression motion.[4]

**DISPOSITION**

The judgment is affirmed.

Appellant's request for judicial notice, filed April 9, 2013, is granted.

---

no objection, and "'incompetent testimony, such as hearsay or conclusion, if received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding.'" (*People v. Bailey* (1991) 1 Cal.App.4th 459, 463.)

[4] Appellant also argues, and respondent does dispute, that the detention of appellant beyond the time necessary for the officers to perform their functions arising out of the Vehicle Code violation cannot be justified on the basis that there existed facts giving rise to an "independent reasonable suspicion" that appellant was engaged in illegal drug trafficking. In connection with this argument, she asks that this court take judicial notice of (1) the distance from the bank in Mojave where Denham began his surveillance of appellant on the night of her arrest to AV Fly Away, and (2) the distance from AV Fly Away to the Antelope Valley Mall. These matters are relevant to the issue appellant raises and otherwise satisfy the requirements for judicial notice. Accordingly, we grant appellant's request. (Evid. Code, §§ 459, subd. (a), 452, subd. (d).) However, because we conclude there was no Fourth Amendment violation because there existed probable cause to arrest appellant for a Vehicle Code violation, thereby justifying a search incident to arrest, we need not, and therefore do not, address the question of whether there existed some other basis for detaining her.