Filed 7/21/15  P. v. Rude CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MAXWELL RUDE,<br><br>    Defendant and Appellant. | 2d Crim. No. B255269<br>(Super. Ct. No. 2013004886)<br>(Ventura County) |

Maxwell Rude appeals a judgment of conviction entered following his guilty plea to possession of marijuana for sale.  (Health & Saf. Code, § 11359.)[1]  We conclude that the trial court properly denied Rude's motion to suppress evidence, and affirm.  (Pen. Code, § 1538.5, subd. (a)(1).)

*FACTUAL AND PROCEDURAL HISTORY*

The Ventura County prosecutor filed a complaint charging Rude with possession of marijuana for sale, and cultivation of marijuana.  (§§ 11359, 11358.)  Rude filed a motion to suppress the evidence that was obtained during his detention in a traffic stop.  This evidence was presented at the combined preliminary examination and suppression hearing:

[1] All further statutory references are to the Health and Safety Code unless stated otherwise.

In the course of a "hit-and-run" investigation, a Ventura County sheriff's deputy visited the residence at 144 Charo Avenue in Thousand Oaks. Inside the residence, the deputy smelled a marijuana odor and heard fans operating. A resident informed the deputy that Rude lived there and grew marijuana. Thereafter, Deputies Shane Matthews and Peter Frank conducted surveillance of the Charo Avenue residence and confirmed that Rude lived there. The deputies then obtained a search warrant to search the property.

On February 12, 2013, Matthews and Frank drove to the Charo Avenue residence to execute the search warrant. They first conducted surveillance outside for 20 to 30 minutes and saw Rude leave the residence, enter a vehicle, and drive away. Frank instructed another deputy in a marked patrol vehicle to follow Rude and initiate a traffic stop. Matthews testified that the deputy was "following [Rude] away and looking for a reason to stop him." At a point 3.3 miles from the residence, Rude provided a reason--he tossed a burning cigarette from his vehicle.

Within minutes, Matthews and Frank arrived at the traffic stop and informed Rude that he would be detained pending execution of the search warrant. Rude was standing outside his vehicle and was not handcuffed. Frank then requested to view Rude's cellular telephone to look for text messages relating to drug sales. Rude consented and provided his telephone. Frank immediately found a text message on the telephone regarding a drug transaction; the text message was the first message that he opened. The two deputies then returned to the Charo Avenue residence to assist in the preliminary execution of the search warrant.

Within 10 to 20 minutes of Rude's traffic stop, the deputies arrived at his residence. The search team eventually found 20 marijuana plants, 100 grams of processed marijuana, a scale, and documents addressed to Rude. Matthew Clark, another resident, stated that Rude was growing marijuana and that he assisted Rude in packaging and selling the drug.

Within 10 to 15 minutes of their arrival, Matthews and Frank allowed other deputies to complete execution of the warrant and they returned to Rude's traffic stop.

2

After advice and waiver of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Rude later admitted in a police interview that he was involved in marijuana sales.

The trial court denied Rude's motion to suppress evidence and held him to answer for the one count of possession of marijuana for sale, and one count of cultivation of marijuana. (§§ 11359, 11358.) After the prosecutor filed a two-count information alleging the same counts, Rude renewed his suppression motion. Following argument by the parties, the court denied the motion.

Rude then pleaded guilty to one count of possession of marijuana for sale. (§ 11359.) The trial court suspended imposition of sentence and granted Rude 36 months of felony probation with terms and conditions, including 90 days of confinement in jail.

Rude appeals and contends that the trial court erred by denying his suppression motion.

*DISCUSSION*

Relying on *Bailey v. United States* (2013) - U.S. - [185 L.Ed.2d 19], Rude asserts that the Fourth Amendment precluded his detention because the deputies detained him beyond the immediate vicinity of the search location, his Charo Avenue residence.

*I.*

One week following Rude's detention and arrest, the United States Supreme Court decided *Bailey v. United States*, *supra*, - U.S. - [185 L.Ed.2d 19]. In *Bailey*, while police officers were preparing to execute a warrant to search an apartment for a handgun, detectives conducting surveillance outside the apartment saw Bailey and another man leave the apartment and drive away. The detectives followed the two men and detained them approximately one mile from the apartment. During a patdown search, the detectives found keys to the apartment in Bailey's pocket. The detectives then handcuffed the two men and drove them to the apartment where the search team was conducting the search. (*Id.* at p. - [185 L.Ed.2d 19, 26-27].)

The Supreme Court concluded that Bailey's detention was unreasonable because he "was detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." (*Bailey v. United States*, *supra*, -U.S. -, -

3

[185 L.Ed.2d 19, 33].) "Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake. Once an individual has left the immediate vicinity of a premises to be searched, however, detentions must be justified by some other rationale." (*Id.* at p. - [185 L.Ed.2d 19, 34].) Such other rationales include a brief stop for questioning based on reasonable suspicion, or an arrest based on probable cause. (*Ibid.*)

*II.*

The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Navarette v. California* (2014) – U.S. - [188 L.Ed.2d 680]; *People v. Suff* (2014) 58 Cal.4th 1013, 1053-1054.) A detention is reasonable pursuant to the Fourth Amendment when the detaining officer can point to specific articulable facts that, in light of the totality of circumstances, provide some objective manifestation that the person detained may be involved in criminal activity. (*Navarette*, at p. - [188 L.Ed.2d 680, 686]; *Suff*, at pp. 1053-1054.) Ordinary traffic stops are investigatory detentions for which law enforcement officers must articulate specific facts justifying the suspicion that a crime is being committed. (*Suff*, at p. 1054; *In re Raymond C.* (2008) 45 Cal.4th 303, 307.)

Pursuant to the Fourth Amendment, the motivations of the detaining police officer are irrelevant to the reasonableness of a traffic stop. (*People v. Suff*, *supra*, 58 Cal.4th 1013, 1054.) "'All that is required is that, on an objective basis, the stop "not be unreasonable under the circumstances."'" (*Ibid.* [motorist violated Vehicle Code by not signaling turn].) Pretextual traffic stops are not unlawful. (*Whren v. United States* (1996) 517 U.S. 806, 812-813 [constitutionality of traffic stop does not depend on "ulterior motive" of officer involved]; *People v. Gallardo* (2005) 130 Cal.App.4th 234, 238 [after officer stopped and detained motorist for broken taillight, officer received motorist's consent to search vehicle for weapons or narcotics]; *People v. Gomez* (2004) 117 Cal.App.4th 531, 537 ["Stopping defendant's vehicle for a seatbelt violation, even if done as a pretext for the narcotics investigation, was entirely legal"].)

4

In reviewing the trial court's ruling on a suppression motion, we defer to the court's factual express and implied findings that are supported by substantial evidence. (*People v. Suff*, *supra*, 58 Cal.4th 1013, 1053  To determine whether the search or seizure is reasonable pursuant to the Fourth Amendment, we exercise our independent judgment. (*Ibid.*)

In the exercise of our independent judgmet, we conclude that the traffic stop here was constitutionally reasonable because Rude violated the law by littering with a cigarette.  (Veh. Code, § 23111 [prohibiting the discharge of a lighted or nonlighted cigarette on any road or highway]; Pen. Code, § 374.4, subd. (a) [prohibiting littering on public or private property].)  Viewed objectively, the circumstances justified Rude's detention.  (*Kentucky v. King* (2011) - U.S. -, - [179 L.Ed.2d 865, 877] [the standard is whether the circumstances viewed objectively justify the police action].)  It matters not that the deputies did not cite Rude for the littering violation; police officers may effect a traffic stop to warn or counsel motorists regarding traffic violations.  Once detained, Frank arrived within minutes and asked to view the text messages on Rude's telephone.  Rude consented to the telephone search and the first text message that Frank viewed concerned a drug transaction.  This information permitted Rude's additional detention for further investigation.  It also provided probable cause to arrest him for violation of the drug laws.  (*People v. Scott* (2011) 52 Cal.4th 452, 474 [probable cause exists when facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime].)

*III.*

At Rude's request, we granted permission to the parties to file supplemental letter briefs regarding application of *Rodriguez v. United States* (2015) - U.S. - [191 L.Ed.2d 492] to Rude's detention.  Relying on *Rodriguez*, Rude contends that his detention was prolonged beyond the time required to address his littering violation. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' - to address the traffic violation that warranted the stop." (*Id.* at

5

p. 498 [seven- or eight-minute delay to allow a canine officer to sniff for narcotics during a traffic stop is an unreasonable seizure absent reasonable suspicion of criminal activity].)

*Rodriguez v. United States*, *supra*, - U.S. - [191 L.Ed.2d 492], does not assist Rude. Here, "within a couple minutes, five minutes" of the traffic stop, Deputy Frank received Rude's consent to view the text messages on Rude's cellular telephone. The first message that Frank viewed concerned the sale of drugs. Within "a couple minutes," deputies had a reasonable suspicion to prolong the traffic stop beyond its initial littering violation purpose. Investigative questions during a routine traffic stop are permissible as long as they do not prolong the stop beyond the time it would otherwise take to carry out the officer's duties pertaining to the stop, e.g., examine the motorist's driver's license and vehicle registration, explain the violation, and issue a warning or citation. (*People v. Tully* (2012) 54 Cal.4th 952, 980-982.) These steps "'require[] a certain amount of time to accomplish.'" (*Id.* at p. 981.) Certainly within the time necessary to examine Rude's driver's license and identification, Frank received Rude's consent to search his telephone.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.


6

Brian J. Back, Donald D. Coleman, Jeffrey Bennett, Judges

Superior Court County of Ventura

_____

Stephen P. Lipson, Public Defender, William Quest, Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.