Filed 12/8/14  In re T.T. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re T.T., | B252468 |
| a Person Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. TJ20943) |
| THE PEOPLE, | |
|     Plaintiff and Respondent, | |
|     v. | |
| T.T., | |
|     Defendant and Appellant. | |

    APPEAL from an order of the Superior Court of Los Angeles County, Catherine J. Pratt, Juvenile Court Referee.  Reversed.

    Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

    Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

The juvenile court found true allegations that T.T. had unlawfully possessed a loaded firearm and live ammunition.  T.T. argues that the police obtained the handgun and ammunition from an unlawful pat search and that the trial court erred by denying his motion to suppress.  We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The People filed a petition pursuant to Welfare and Institutions Code section 602 alleging that T.T. had committed the offenses of carrying a loaded and unregistered handgun (Pen. Code, § 25850, subd. (a), a felony), possession of a firearm by a minor (*id*., § 29610, a felony), and possession of live ammunition by a minor (*id*., § 29650, a misdemeanor).  T.T. denied the allegations and filed a motion to suppress.

The trial court heard T.T.'s motion to suppress at the jurisdiction hearing.  Los Angeles Police Officer Richard Pacheco testified that on August 16, 2014 he and his partner, Officer Wilhelm, were among additional officers assigned to patrol the Nickerson Gardens and Jordon Downs housing developments because of a recent increase in rival gang violence.  The gang violence included a drive-by shooting the previous week at Nickerson Gardens.  One of the victims was injured in the shooting, and the other died.

At approximately 8:40 that morning, Officers Pacheco and Wilhelm saw T.T., then 17 years old, in the area of Nickerson Gardens riding his bicycle against traffic, in violation of Vehicle Code section 21650.1.  T.T. was wearing a long-sleeved shirt and sweatpants.  Officer Wilhelm drove the patrol car next to T.T. and told him to stop.  T.T. complied, straddling his bicycle as the officers got out of their patrol car.  Officer Pacheco called in their location while Officer Wilhelm told T.T. to put his hands behind his back and conducted a pat search for weapons.  Officer Wilhelm found a handgun inside the front waistband of T.T.'s sweatpants.  Officer Wilhelm handed the gun to

Officer Pacheco and placed T.T. in handcuffs. Officer Wilhelm subsequently removed a live round from the chamber of the gun and removed the magazine, which contained ammunition. According to Officer Pacheco, Officer Wilhelm conducted the pat search within 10 seconds, and handcuffed T.T. within a minute, of getting out of the patrol car.

At the conclusion of the hearing, counsel for T.T. argued that the initial stop was not justified because there was insufficient evidence T.T. had committed a traffic violation and that the ensuing pat search was not supported by a reasonable belief T.T. was armed and dangerous. The People argued that the officers had probable cause to arrest T.T. at the time of the stop for a Vehicle Code violation and that the pat search was a valid search incident to arrest.

The trial court denied the motion to suppress without deciding whether the search was a valid search incident to an arrest. The court concluded that the officers conducted a valid stop for a possible traffic infraction and that their reasonable concern for public safety justified the search.

At the conclusion of the jurisdiction hearing, the juvenile court found true the allegations T.T. had committed the offenses of possession of a firearm and possession of ammunition by a minor, and declared the first offense a felony and the second offense a misdemeanor. The court found not true and dismissed the allegation T.T. had committed the offense of carrying a loaded and unregistered handgun. At the disposition hearing immediately following the hearing, the court declared T.T. a ward of the court and ordered him home on probation.

**DISCUSSION**

A.    *Standard of Review*

"'"'"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise

3

our independent judgment.'" [Citations.]" (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.) "We will affirm the trial court's ruling if it is correct on any theory of law applicable to the case, even if for reasons different than those given by the trial court. [Citation.]" (*People v. Evans* (2011) 200 Cal.App.4th 735, 742.) The trial court has the power to judge the credibility of witnesses, resolve conflicts in testimony, weigh evidence, and draw factual inferences. (*People v. Alexander* (2010) 49 Cal.4th 846, 883; see *People v. Rodriguez* (Nov. 6, 2014, H038588) ___ Cal.App.4th ___, ___ [2014 WL 5768751, p. 9].) We neither reweigh the evidence nor reevaluate witness credibility. (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

B.      *The Officers Did Not Conduct a Lawful Pat Search*

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty. [Citations.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821; accord, *Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 819.) A detention implicating the Fourth Amendment occurs "when an officer restrains a person's liberty by force or show of authority." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1081; see *In re J.G.* (2014) 228 Cal.App.4th 402, 409 [detention occurs ""'"when [a police] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen"'"'].)

"The reasonableness of the officer's suspicion is determined by what he or she knows before any search occurs. [Citation.] And when a detention is constitutionally justified, if the officer has a reasonable suspicion that the person is armed and dangerous, the officer may pat search the detainee for weapons. [Citation.]" (*People v. Turner* (2013) 219 Cal.App.4th 151, 160.) "'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may 'take necessary measures

4

to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" (*People v. Rios* (2011) 193 Cal.App.4th 584, 598-599, quoting *Terry v. Ohio* (1968) 392 U.S. 1, 24 [88 S.Ct. 1868, 20 L.Ed.2d 889]; see *Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 320 ["[w]hen an officer detains a suspect, the officer may pat down the suspect's outer clothing if he or she has reason to believe the suspect may be armed"].) "'"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." [Citation.]' [Citation.]" (*In re H.H.* (2009) 174 Cal.App.4th 653, 658; see *In re H.M.* (2008) 167 Cal.App.4th 136, 143 ["[t]he sole justification for the search is the protection of the officer and others nearby, and the search must therefore be confined in scope to an intrusion reasonably designed to discover weapons"].)

In order to conduct a pat search for weapons, the officer must be able to "'point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous.' [Citations.]" (*In re H.M.*, *supra*, 167 Cal.App.4th at p. 143; see *Terry v. Ohio*, *supra*, 392 U.S. at p. 21.) "'A frisk following a detention for investigation "is an additional intrusion, and can be justified only by specification and articulation of facts supporting a reasonable suspicion that the individual is armed."' [Citation.]" (*People v. Suennen* (1980) 114 Cal.App.3d 192, 199.)

We agree with the trial court that Officers Pacheco and Wilhelm had reasonable suspicion to detain T.T. when they observed him riding his bicycle against traffic on the road, in violation of Vehicle Code section 21650.1. Vehicle Code section 21650.1 provides, "A bicycle operated on a roadway, or the shoulder of a highway, shall be operated in the same direction as vehicles are required to be driven upon the roadway." Pursuant to Vehicle Code section 40000.1, a violation of Vehicle Code section 21650.1 is an infraction.

T.T. contends that the detention was unlawful because he was riding his bicycle on the sidewalk, not the roadway. The record does not support T.T.'s contention. Officer Pacheco testified that T.T. was riding his bicycle against traffic, and that when the

officers stopped T.T. he was right next to the patrol car and between the officers and the sidewalk. Although at one point during cross-examination Officer Pacheco testified he could not recall whether T.T. was riding his bicycle on the street or the sidewalk, he later described T.T. as riding in the opposite direction of the moving patrol car, and stated that T.T. and the officers were passing each other. This testimony constituted substantial evidence to support the trial court's findings that T.T. was riding his bicycle against traffic on the street, and not on the sidewalk, and that the officers had probable cause to detain him for violating Vehicle Code section 21650.1.

T.T. also contends that the pat search was unlawful because Officer Pacheco "failed to articulate any specific activity engaged in by [T.T.] which raised a reasonable suspicion that he was armed and dangerous." The record supports this contention. The People presented no evidence that Officers Pacheco and Wilhelm had any suspicion, reasonable or otherwise, that T.T. was armed and dangerous. Nor did the officers point to any "specific and articulable facts" that could give rise to an inference that T.T. was armed and dangerous. Officer Pacheco testified only that, at approximately 8:40 a.m., he and Officer Wilhelm stopped T.T. and Officer Wilhelm "conducted a cursory pat down search for weapons" ten seconds after the officers stopped him. When asked if he had observed "anything unusual about how or where [T.T.] was riding his bicycle," Officer Pacheco stated only that T.T. was riding against traffic in violation of the Vehicle Code. There was no evidence of "nervous, evasive behavior." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [120 S.Ct. 673, 145 L.Ed.2d 570].) There was no evidence T.T. was "sweating profusely," "appeared confused," or was "frightened and fleeing from a dangerous situation." (*In re H.M.*, *supra*, 167 Cal.App.4th at p. 144.) Nor was there evidence that T.T. "suddenly put his hand into [a] bulging pocket." (*People v. Rosales* (1989) 211 Cal.App.3d 325, 330.) The only evidence was that T.T. complied with the officers' orders. In the absence of any specific and articulable facts or inferences that T.T. was armed and dangerous, a pat search was not justified. (See *People v. Garcia* (2006) 145 Cal.App.4th 782, 786 ["'[w]here, as here, there are no such specific and articulable facts presented, the patdown search cannot be upheld'"].)

6

The People argue that "[i]n light of the recent drive-by shooting murder and the heightened tensions of ongoing violence between gang members in the two rival housing projects, Officer Wilhelm acted reasonably when he conducted a protective patdown to ensure [T.T.] did not possess any weapons before the officers went through their traffic stop process." It is true that the existence of gang violence in the area is relevant to the propriety of a pat search. (See *In re H.M.*, *supra*, 167 Cal.App.4th at p. 146 ["[o]fficers in an area plagued by violent gang activity need not ignore the reality that persons who commit crimes there are likely to be armed"].) But the fact that the detention occurred in an area of high crime or gang activity, without more, does not justify a pat search: "'[T]he fact that an area involves increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous. While this factor alone may not justify a weapon search, combined with additional factors it may.' [Citations.]" (*Ibid.*; see also *People v. Evans*, *supra*, 200 Cal.App.4th at p. 754 ["[t]hat a detention occurs in a high crime area may contribute to a finding of probable cause if it is relevant to the officer's belief that the suspect is involved in criminal activity [citations], but that principle does not help the People here, given that there was no apparent connection between the hour and area, on the one hand, and the officers' suspicions, on the other"].) There were no "additional factors" to combine with the fact that there had been recent gang violence in the area.

C.     *The Search Was Not a Lawful Search Incident to an Arrest*

The People argue that because the officers observed T.T. violate Vehicle Code section 21650.1 they had probable cause to arrest him, and that the search of T.T. was valid as a search incident to an arrest. Citing *Atwater v. City of Lago Vista* (2001) 532 U.S. 318 [121 S.Ct. 1536, 149 L.Ed.2d 549], *People v. McKay* (2002) 27 Cal.4th 601, and *People v. Gomez* (2004) 117 Cal.App.4th 531 (among other cases), the People argue that Officers Pacheco and Wilhelm had probable cause to arrest T.T. for violation of Vehicle Code section 21650.1, even though it is an infraction, and that had they done so, they could have conducted a lawful search incident to an arrest. Conceding T.T. was not

7

under arrest "when Officer Wilhelm conducted the patdown search," the People assert that "the search was valid as long as the officers had probable cause to arrest, even though the officers had not yet affected [*sic*] an arrest."

That is not the law. "[A] police officer who makes a lawful arrest may conduct a warrantless search of an arrestee's person and the area within his or her immediate control. [Citations.]" (*People v. Evans, supra*, 200 Cal.App.4th at p. 744.) The search incident to arrest exception to the Fourth Amendment does not apply, however, if the officer does not arrest the defendant. (*Knowles v. Iowa* (1998) 525 U.S. 113, 115-116 [119 S.Ct. 484, 142 L.Ed.2d 492]; see *People v. McKay, supra*, 27 Cal.4th at p. 613, fn. 6 [the Supreme Court in *Knowles* held "that the exception for a search incident to a custodial arrest could not be applied where no custodial arrest had occurred"]; *U.S. v. Jackson* (7th Cir. 2004) 377 F.3d 715, 717 [*Knowles* stands for "the principle that the reasonableness of a search depends on what the officers actually do, not what they might have done," and "it is *custody*, and not a stop itself, that makes a full search reasonable"].) "The mere fact that an officer has the authority to arrest an individual does not, and never has, automatically permitted the officer to conduct a pat-down search should he choose not to effectuate the arrest. [Citation.] For an officer to conduct a search incident to arrest, there must be an actual arrest. Otherwise, unless the officer points to specific facts that demonstrate reasonable suspicion that the individual is armed and dangerous, the Fourth Amendment tolerates no frisk. [Citation.]" (*Bennett v. City of Eastpointe* (6th Cir. 2005) 410 F.3d 810, 824, italics omitted, citing *Knowles, supra*, at pp. 117-119; cf. *Virginia v. Moore* (2008) 553 U.S. 164, 166-167, 177 [128 S.Ct. 1598, 170 L.Ed.2d 559] [distinguishing *Knowles* because "[t]he state officers *arrested*" the defendant in *Moore* for a non-arrestable offense].)

It is true that the police can make a custodial arrest for an infraction or fine-only offense without violating the Fourth Amendment. (See *Atwater v. City of Lago Vista, supra*, 532 U.S. at pp. 323, 355; *People v. Gomez, supra*, 117 Cal.App.4th at pp. 538-539.) It is also true that a search incident to such an arrest does not violate the Fourth Amendment. (See *People v. McKay, supra*, 27 Cal.4th at p. 607; *Gomez, supra*, at

8

pp. 539-549.)  In *Atwater*, *McKay*, and *Gomez* the police searched the defendant after making a custodial arrest for a traffic violation.  (See *Atwater*, *supra*, at p. 324; *McKay*, *supra*, at p. 606; *Gomez*, *supra*, at p. 536.)[1]  Officers Pacheco and Wilhelm, however, did not arrest T.T. for the infraction of violating Vehicle Code section 21650.1.  They arrested T.T. for the firearm and ammunition violations, but that was only after they had searched him.  (See *In re J.G.* (2010) 188 Cal.App.4th 1501, 1506 ["'a search is not . . . made legal by what it turns up[; i]n law it is good or bad when it starts and does not change character from its success'"].)  The pat search here cannot be justified as a search incident to an arrest.[2]

_____

[1]      In *Gomez* the police subjected the defendant to a prolonged detention that became a de facto arrest.  (See *People v. Gomez*, *supra*, 117 Cal.App.4th at pp. 537-538.)

[2]      The People argue that, "[a]lthough the officers ultimately arrested [T.T.] for more serious charges (possessing a firearm and live ammunition) and exercised their discretion to forgo formal arrest for the lesser charge (the Vehicle Code violation), they had probable cause to arrest [T.T.] at the time of the search, and nothing more was required."  There is no evidence in the record, however, that the officers exercised any such discretion, or that they ever considered arresting T.T. for the infraction of riding his bicycle on the wrong side of the road.

## DISPOSITION

The order is reversed.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10