Filed 6/8/15 Unmodified opinion attached

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO
APPELLATE DIVISION**

THE PEOPLE,

       Plaintiff and Respondent,

  v.

FELIPE CAMPUZANO,

       Defendant and Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Appellate Division Case No.:
**CA256406**
Trial Court Case No.:
M178993

**ORDER MODIFYING OPINION**

The opinion filed in this matter on June 5, 2015, is modified as follows:

1.     On page 1, as the first and second paragraphs of the opinion, please insert the following text:

     APPEAL from the denial of defendant Felipe Campuzano's pretrial Penal Code section 1538.5 motion to suppress evidence by the Superior Court, County of San Diego, Kenneth K. So, Judge.

     AFFIRMED.

This modification does not affect the judgment.

     **IT IS SO ORDERED.**

Dated _____

_____
**GALE E. KANESHIRO**
Acting Presiding Judge, Appellate Division

Filed 6/5/15 Unmodified opinion

## TO BE PUBLISHED IN THE OFFICIAL REPORTS

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

### APPELLATE DIVISION

| | |
|---|---|
| THE PEOPLE, | Appellate Division No.: CA256406 |
| Plaintiff and Respondent, | Trial Court Case No.: M178993 |
| v. | Trial Court Location: Central Division County Courthouse |
| FELIPE CAMPUZANO, | **OPINION** |
| Defendant and Appellant. | |

### Factual and Procedural Background

Subsequent to this court initially reversing the trial court on the basis that a mistake of law could not support a reasonably suspicion under the Fourth Amendment, the United State Supreme Court in *Heien v. North Carolina* (2014) __ U.S. __, 135 S. Ct. 530 held that an objectively reasonable mistake of law can give rise to a reasonable suspicion under the Fourth Amendment. On January 1, 2015, the Court of Appeal remanded this matter "with directions to vacate [this court's] opinion and judgment filed November 6, 2014, and to reconsider the matter in light of *Heien v. North Carolina* (2014) __ U.S. __, [2014 WL 7010684]." On January 7, 2015, the Appellate Division issued an Order requesting supplemental briefing, and thereafter set the matter for rehearing on May 14, 2015. We now affirm the trial court.

On December 17, 2013, at approximately 9:30 p.m., the defendant was straddling his bicycle and operating it at a "very slow, walking speed" alongside of a female companion who was walking. The couple was traveling eastbound along the 3800 block of University Avenue near the corner of 39th Street when they were first observed by police officers. Two officers, Adam George and Patrick Kelly, contacted and detained the defendant just before the traffic light at the intersection of 39th Street and University Avenue because he was "riding on a bicycle in a business district" in violation of San Diego Municipal Code subdivision (a) of section 84.09.[1]

Officer Kelly told the defendant the reason for the stop; the defendant was agitated, confrontational and belligerent. He did not follow the officer's instructions and did not seem to understand the reason for the stop. Officer George suspected the defendant was under the influence of a controlled substance due to his behavior, inability to focus on the conversation, rapid speech, and failure to understand what was going on.

The officer testified that he handcuffed defendant because he was uncooperative and potentially armed. While the defendant was handcuffed, the officer attempted to speak with him. The officer had the defendant get off the bike and sit on the bumper of the patrol car while a third officer conducted a records check. Officer George told the defendant he was stopped for the infraction, but the defendant thought he was being stopped for a probation check. Defendant denied being on probation or parole, but admitted that he used narcotics several years before. By this time, Officer George had observed several objective symptoms that indicated to him that the defendant was under the influence of a controlled substance so he decided to conduct a drug evaluation. These objective symptoms included body tremors, speaking rapidly, being disoriented, occasional incoherence, and an inability to focus on the conversation.

---

[1] San Diego Municipal Code section 84.09 (Bicycle Riding Restricted) provides:
**(a) No person shall operate a bicycle upon any sidewalk fronting any commercial business establishment unless official signs are posted authorizing such use.**
(b) Any person riding or operating a bicycle on any sidewalk or right of way not open to public vehicular traffic shall exercise due care and shall yield the right of way to pedestrians.
(c) No person shall operate a bicycle on any sidewalk or right of way not open to public vehicular traffic at a speed greater than is reasonable and prudent having due regard for pedestrian traffic and in no event at a speed which endangers the safety of persons or property. (Emphasis added.)

Officer George asked the defendant to perform tests as part of a field evaluation of his condition; the defendant agreed and submitted to field tests. The officer took a measurement of the defendant's pulse rate approximately five to ten minutes after the first contact with the defendant. Based upon the defendant's performance on these tests, the officer believed the defendant was under the influence of a stimulant and arrested him for violating Health and Safety Code section 11550.

The officers described the area as a business district with "no residential homes on that block." The officers more specifically testified that there were business establishments on the west side of that same block and that it could "absolutely" be classified as a commercial area. Photographs of businesses across the street and on the west side of the block were admitted into evidence. There were no photographs showing any business(es) where the defendant was initially seen or stopped.

After the testimony of witnesses was completed, the hearing was continued to permit the parties to present additional information to the court on the nature of the businesses on the block in question. At the subsequent hearing, the parties stipulated that the alleged bicycle offense occurred in the area depicted in the photographic exhibits submitted to the court, that is, in front of the former business known as Lee's Auto Repair. The photographs show that the former Lee's Auto Repair is a corner lot next to the intersection of University Avenue and 39th Street, surrounded by a chain link fence with weeds growing along the fence and in the asphalt of the parking lot of that former business. The trial court made several references to "the former Lee's Auto Repair" while viewing the photographs. There was no testimony as to what type of lot was to the west-side of the former Lee's Auto Repair or how far down the block the next commercial business establishment was located.

The trial court recognized that this was a case of first impression and wrestled with the interpretation of San Diego Municipal Code section 84.09, subdivision (a). The trial court believed the thrust of the statute was the policy to preclude bicycle riding along sidewalks where people would be going in and out of stores. The trial court ultimately agreed with the People's proposed broad interpretation of the ordinance – that if there are *any* commercial establishments on the block,

the sidewalk of that entire block is covered by the ordinance.  Based upon this expansive interpretation of the statute and finding no prolonged detention, the trial court denied defendant's suppression motion.

**Discussion**

Statutory interpretation is subject to de novo review, and *People v. Glaser* (1995) 11 Cal.4th 354 explains the applicable standard of review relative to the trial court's factual findings and the reasonableness of a search or seizure:

> [The appellate court] defer[s] to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, [an appellate court] exercise[s] independent judgment. [Citations.]

(*Id.* at p. 362.)

This is a case of first impression as to the interpretation of San Diego Municipal Code section 84.09, subdivision (a) and whether, based upon that interpretation, the stop and detention of the defendant was reasonable.  We are guided by the following rules of statutory construction:

(1) Courts look to the Legislature's intent to effectuate a statute's purpose.
(2) Courts give the words of a statute their usual and ordinary meaning.
(3) A statute's plain meaning controls the court's interpretation unless the statutory words are ambiguous.
(4) If the words of a statute do not themselves indicate legislative intent, courts may resolve ambiguities by examining the context and adopting a construction that harmonizes the statute internally and with related statutes.
(5) A literal construction does not prevail if it is contrary to the apparent legislative intent.
(6) If a statute is amenable to two alternative interpretations, courts will follow the one that leads to the more reasonable result.
(7) Courts may consider legislative history, statutory purpose, and public policy to construe an ambiguous statute.
(8) If a statute defining a crime or punishment is susceptible of two reasonable interpretations, courts will ordinarily adopt the interpretation more favorable to the defendant.

(*People v. Arias* (2008) 45 Cal.4th 169, 171.)

The People propose an expansive reading of the statute consistent with the police officers' interpretation of the ordinance -- that if there are *any* commercial establishments on the block, the

sidewalk of the entire block is covered by subdivision (a) of section 84.09.  The defense proposes a narrow interpretation and strict construction of the ordinance – that it applies *only* to the operation of a bicycle upon the sidewalk directly in front of an existing commercial establishment.

In the instant matter, the police officers saw the defendant for the first time when he was operating a bicycle on the sidewalk in front of the former Lee's Auto Repair lot, close to the intersection.    The finding of the court that the photographs depict the *former* Lee's Auto Repair indicates that all parties were aware that it was no longer operating as a commercial business establishment.

The intended purpose of subdivision (a) of section 84.09 is to preclude bicycle traffic on sidewalks where people are going in and out of commercial businesses.  Subdivision (a) of the ordinance must be read in conjunction with subdivisions (b) and (c), which permit the riding or operation of a bicycle on *any* sidewalk not open to vehicular traffic with due care and the yielding of the right of way to pedestrians and at a speed that is no greater than is reasonable and prudent having due regard for pedestrian traffic.   The plain meaning of subdivision (a) is that bicycle operation is precluded only on that portion of the sidewalk[2] fronting[3] commercial[4] business[5] establishments or places that are open for the trading of commodities and/or services.

If the City Council intended for subdivision (a) to apply to the entire block in a commercial or business district, they could have readily and expressly included such language in the ordinance.[6]  Similarly, if the City Council intended that the ordinance apply to the entire block when there are one or more businesses on the block, they could have so stated.  However, the City Council chose to limit the offense to operating a bicycle upon any portion of the sidewalk directly fronting a

[2] Webster's New World Dictionary defines "sidewalk" as "a path for pedestrians, usually paved, along the side of a street."  This definition and common usage suggest the sidewalk generally extends the length of the block.

[3] Webster's New World Dictionary defines "front" as "…the part of something that faces forward or is regarded as facing forward; most important side; forepart; the place or position directly before a person or thing; *Archit.* A face of a building; esp., the face with the principal entrance."

[4] Webster's New World Dictionary defines "commercial" as "…of or connected with commerce or trade; of or having to do with stores, office buildings, etc. [commercial property]."  The same dictionary defines commerce as "the buying or selling or goods…; trade."

[5] Webster's New World Dictionary defines "business" as "the buying and selling of commodities and services; store, factory, etc.; …a commercial or industrial establishment; a store, factory, etc.; the trade or patronage of customers."

[6] See, e.g., Vehicle Code section 22102 (U-turn in business district), which provides:  "No person in a business district shall make a U-turn, except at an intersection, or on a divided highway where an opening has been provided in accordance with Section 21651."

commercial business establishment. The ambiguity of subdivision (a) of section 84.09 does not stem only from the definition of "commercial business establishment" but also from the meaning of "sidewalk." The words of the ordinance are clear and unambiguous, however, when read in context along with subdivisions (b) and (c).

This narrow interpretation of the ordinance will serve to provide police officers with clear guidance and direction and will appropriately limit police power. Officers should not have carte blanche to stop anyone riding a bicycle on the sidewalk of any block with a commercial business establishment, including mixed-use blocks where residences[7] and business establishments co-exist on the same block. Similarly, there is no need to generally prevent bicycle riding on sidewalks where a few of the buildings or lots on the block have been boarded up or are closed to all business, or in front of residences within a block that also contains commercial business establishments.

In the instant matter, the officers' interpretation of San Diego Municipal Code section 84.09, subdivision (a) was a mistake of law. The focus of our inquiry is whether the officer's mistake of law was objectively reasonable under the facts of the case to support the reasonable cause to stop and detain the defendant. (*Heien v. North Carolina* (2014) __ U.S. __ , 135 S. Ct. 530.) In this opinion of first impression on the interpretation of the municipal ordinance, we discuss the expansive and narrow interpretations of the statute. There was no prior guidance for the officers in interpreting the ordinance. Under the facts of this case, we find that it was objectively reasonable for the officer to read the ordinance expansively[8], giving rise to a reasonable cause to stop and detain the defendant for a violation of San Diego Municipal Code section 84.09, subdivision (a), an infraction. Further, there was probable cause to arrest him for that infraction.

---

[7] Respondent acknowledged in oral argument that had the former Lee's Auto Repair Shop been a residence, there would have been no violation of the ordinance.

[8] The trial court closely examined this ordinance and interpreted it to prohibit bicycle riding on a block that includes any business. The fact that this court interprets the ordinance differently does not mean the trial court's conclusion was necessarily "wholly unreasonable" as argued by defendant. In fact, it highlights the sometimes difficult task for lawyers and judges of determining the meaning of statutes by way of statutory construction. We do not, and cannot, expect our police officers to be legal scholars. And as Justice Roberts stated in *Heien*, police officers may indeed confront situations in the field "as to which the application of a statute is unclear – however clear it may later become." (*Heien, supra*, 135 S.Ct. at p. 539.) It is axiomatic that if an experienced judge, who is obviously legally trained, found that defendant's conduct at this location was prohibited by this ordinance, it was also reasonable for an officer to so believe. However, moving forward, officers should have a clear understanding of the application of this ordinance.

(See *Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354, 121 S. Ct. 1536; *People v. McKay* (2002) 27 Cal. 4th 601, 607; *People v. Gomez* (2004) 117 Cal. App. 4th 531, 538-539.)

Under the totality of the circumstances, there was no prolonged detention because immediately after the stop and detention for the infraction, the officer observed the defendant's objective symptoms of drug intoxication and had probable cause to arrest the defendant for being under the influence of a controlled substance.

## Conclusion

Ultimately, the stop, detention, arrest and search were lawful. The pre-trial Order of the trial court denying the pretrial suppression motion is affirmed. This matter is remanded to the trial court for further action consistent with this Opinion.

_____
GALE E. KANESHIRO
Judge, Appellate Division


WELLS, P.J., concurring:

I concur.

_____
KERRY WELLS
Presiding Judge, Appellate Division


CAMPOS, J., concurring:

I concur.

_____
YVONNE E. CAMPOS
Judge, Appellate Division

-7-

<u>San Diego Superior Court Trial Judge</u>

Honorable Kenneth K. So

<u>Attorney for Appellant</u>                          <u>Attorney for Respondent</u>

Robert Ford, Deputy Public Defender          Shelley A. Webb, Deputy City Attorney