Filed 2/5/24  P. v. Leon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER MARIE LEON,<br><br>    Defendant and Appellant. | D083426<br><br><br>(Super. Ct. No. FVI20002857) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Charlie Hill, Judge.  Affirmed.

Deanna L. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Jennifer Marie Leon pled no contest to transportation of a controlled substance in violation of Health and Safety Code[1] section 11379, subdivision (a). On appeal, Leon argues the trial court wrongly denied her motion to suppress evidence obtained during a warrantless search of her vehicle following a traffic stop that led to Leon's arrest. We conclude the officers had reasonable suspicion to detain Leon, probable cause to arrest her, and a reasonable basis to search her vehicle incident to the arrest. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In fall 2020, two sheriff's deputies initiated a traffic stop of Leon after she parked in front of her home. Leon does not challenge the validity of the traffic stop. One of the deputies observed Leon exit and "quickly" re-enter her vehicle after they initiated the stop and activated the lights on the patrol car. He observed Leon close the driver-side door behind her then reach over to the passenger's side before getting out of the car again.

The deputy approached Leon and soon concluded she "was under the influence." He immediately noticed her "bloodshot red eyes," "rapid . . . body movement," and a "white coating around her mouth." He also observed she "avoided making eye contact," her eyes were "rapidly moving side to side," and her pupils were "constricted." The deputy testified during his "training at the academy" he was taught to look for signs that someone is under the influence of a controlled substance, including "[r]apid eye movement, bloodshot eyes, a white coating around the mouth," "[c]ontinuous body movement[,] [a]nd avoiding eye contact." He also testified he had conducted

---

[1] Further undesignated statutory references are to the Health and Safety Code.

2

five to ten prior investigations into whether someone was under the influence of a controlled substance and had been in contact with someone under the influence more than five times.

Leon began to walk to her house and the deputy asked her to stop. The deputy and his partner questioned Leon for several minutes, although the record does not establish the exact duration of the interaction. They asked if she had been arrested before, whether she was on probation or parole, and whether she had guns, drugs, or anything illegal in her car. They told her she was "acting strange," and she said she had smoked marijuana " 'a little while ago.' " She also told them she had "low blood sugar."

After questioning her, the deputy handcuffed Leon, who "briefly resisted," and placed her in the back seat of his patrol car. He then searched her vehicle for "controlled substances" and discovered "[a] white crystal substance located inside her purse."

Leon was charged with transportation of amphetamine, a controlled substance, in violation of section 11379, subdivision (a) and possession of amphetamine for sale in violation of section 11378. She filed a motion to suppress the evidence recovered in the search pursuant to Penal Code section 1538.5. Leon argued, among other things: the traffic stop was unconstitutionally prolonged; the officers did not have reasonable suspicion that Leon was under the influence of a controlled substance; the officers did not have probable cause to arrest her for being under the influence of a controlled substance; and the search of the vehicle was not a proper search incident to arrest and not supported by probable cause. The arresting deputy and Leon testified at the suppression hearing.

The court denied Leon's motion. The court credited the deputy's testimony that he "saw that [Leon] was under the influence" once he made

3

contact with her and found at that point the investigation "bec[a]me an under the influence investigation." The court found it was "reasonable" in such an investigation to search for "paraphernalia" or "controlled substances" in the vehicle.

DISCUSSION

Leon makes four principal arguments on appeal. First, she claims the traffic stop "was unlawfully prolonged" beyond the time it would reasonably take to investigate and resolve the traffic offense, failing to have a front license plate.[2] Second, she argues the officers did not have reasonable suspicion to detain and question her for any other offense. Third, she contends the officers lacked probable cause to support an arrest. And fourth, she argues even if she was lawfully arrested, the vehicle search was constitutionally impermissible. As explained below, none of these arguments supports reversal.

In reviewing a court's ruling on a motion to suppress evidence, we review "the trial court's express and implied factual findings" for "substantial evidence," "considering the evidence in the light most favorable to the trial court's order." (*People v. Lee* (2019) 40 Cal.App.5th 853, 860–861; citing *People v. Brown* (2015) 61 Cal.4th 968, 975, and *People v. Tully* (2012) 54 Cal.4th 952, 979.) We "independently determine whether the search was constitutional." (*Lee,* at p. 860.)

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has [reasonable suspicion, which comprises] 'a particularized and objective basis for suspecting the particular person

---

[2]    "Since California issues two license plates for motor vehicles other than motorcycles [Veh. Code, § 4850], the absence of a California license plate on the front of a vehicle is an established basis for a traffic stop." (*People v. Reyes* (2011) 196 Cal.App.4th 856, 860.)

4

stopped of criminal activity.' " (*Navarette v. California* (2014) 572 U.S. 393, 396–397.) Here, the officers had reasonable suspicion to support at least a brief seizure almost as soon as the traffic stop began, as she appeared to be under the influence of a controlled substance. (Cf. *People v. Campuzano* (2015) 237 Cal.App.4th Supp. 14, 21 ["Under the totality of the circumstances, there was no prolonged detention because immediately after the stop and detention for [an] infraction, the officer observed the defendant's objective symptoms of drug intoxication and had probable cause to arrest defendant for being under the influence of a controlled substance."].)

Leon claims there is no substantial evidence in support of the trial court's conclusion that she was observed to be under the influence. However, the deputy testified once he approached Leon, he saw objective "signs and symptoms" that she was under the influence of a controlled substance, consistent with his law enforcement training. These included bloodshot eyes, rapid body and eye movement, constricted pupils, a white coating around her mouth, and avoidance of eye contact. Leon claims the deputy was not sufficiently experienced to determine whether a person is under the influence based on demeanor and appearance. However, she ignores that the deputy testified he received specific training on identifying whether a person is under the influence. Although he did not have extensive experience, the deputy had applied his training on multiple prior occasions. Given that Leon displayed numerous signs of intoxication consistent with the deputy's training, his unrebutted testimony is substantial evidence that Leon was apparently under the influence of a controlled substance.

Leon argues her use of marijuana and her low blood sugar could have "contribute[d] to her appearance and demeanor." But the record suggests the deputies learned of these circumstances somewhat late in the interaction,

5

after the majority of the questioning was complete. In any case, Leon does not claim all of the symptoms the deputy observed could have resulted from low blood sugar or marijuana use. Nor is there any record evidence bearing on the symptoms of low blood sugar or marijuana use. Accordingly, we need not conclude that this information would dispel a reasonable officer's belief that Leon was under the influence. "In urging us to reject [the trial court's] findings and disbelieve the testifying officer, [Leon] asks us to reweigh the evidence and substitute our findings for those of the trial court. We decline [her] invitation, which runs contrary to well-settled principles of appellate review." (*People v. Sims* (2021) 59 Cal.App.5th 943, 954.)

Leon also contends the questioning was more significant than necessary to confirm she was under the influence, claiming it strayed into topics unrelated to her drug use. Given that the deputy was relying on Leon's demeanor as evidence of intoxication, it was reasonable to confirm the suspicion by continuing to talk to her and observe her behavior. The record does not support that the detention was longer than necessary, as the officers appear to have asked fewer than a dozen questions, and the thrust of the questioning was not obviously beyond the scope of a reasonable investigation. For example, a suspect's potential criminal history and possession of guns are circumstances that can indicate involvement in commercial drug offenses. (See, e.g., *People v. Washington* (2021) 61 Cal.App.5th 776, 793 [evidence that defendant was carrying a gun supported conviction for selling drugs]; *People v. Aho* (1985) 166 Cal.App.3d 984, 992 ["defendant's arrest and conviction record" relevant to whether search warrant for suspected drug trafficker's residence was supported by probable cause].)

Leon next claims her arrest was not supported by probable cause. "[A]n officer must have probable cause before making an arrest." (*In re J.G.*

6

(2010) 188 Cal.App.4th 1501, 1505.) " '[P]robable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.' " (*People v. Ingle* (1960) 53 Cal.2d 407, 414.) As already discussed, the deputy reasonably concluded, based on objective indicia and his training and experience, that Leon was under the influence of a controlled substance. He continued to observe Leon over the course of the questioning, noted she "was acting strange," and continued to believe her appearance and demeanor were consistent with being under the influence. (See *People v. Sanchez* (1987) 195 Cal.App.3d 42, 48 ["plain-sight observations" of defendant's "demeanor," including droopy eyelids, slurred speech and constricted pupils, "clearly furnished probable cause to arrest [him] for being under the influence of a controlled substance"].) In addition, Leon admitted to the deputies she had recently smoked marijuana, which, because the deputies had just observed her driving a car, provided probable cause to believe she was unlawfully driving under the influence of a drug. (See Veh. Code, § 23152, subd. (f) ["It is unlawful for a person who is under the influence of any drug to drive a vehicle."].)

Leon argues the deputy's testimony was inconsistent as to whether he had "arrested" her before the search. She also notes he "did not claim probable cause to arrest prior to the vehicle search." But the deputy clearly testified, after refreshing his recollection with his contemporaneous incident report, he had in fact arrested Leon by placing her in handcuffs in the back of his patrol car *before* searching her vehicle. And we do not need the deputy to testify he had concluded probable cause existed. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' " (*Brigham City, Utah v. Stuart* (2006) 547 U.S. 398, 404.) Thus, even when a

7

law enforcement official contends there was no probable cause, which is not the case here, a court may find to the contrary. (See *Florida v. Royer* (1983) 460 U.S. 491, 507 (plurality opinion) [although officer testified "there was no probable cause to arrest until [defendant's] bags were opened" this did "not foreclose the State from justifying [the] custody by proving probable cause"].)

Leon relies on *In re Antonio B.* (2008) 166 Cal.App.4th 435 for the proposition that "the deputy's observations fell far short of probable cause to make an arrest for unlawful drug use." In *In re Antonio B.* there was "no dispute that the police officers had cause to conduct an investigative detention of appellant, but they did not have probable cause to arrest him at the time of the stop." (*Id.* at 441.) Even if probable cause had been in dispute in *In re Antonio B.*, the facts are not similar: the defendant was detained solely because he had been walking with someone who was smoking marijuana. (*Ibid.*) Unlike Leon, there were no signs he was under the influence of a controlled substance.

Finally, Leon argues the search of her car was impermissible even if she was properly arrested. "Police may search a vehicle incident to a recent occupant's arrest only if . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." (*Arizona v. Gant* (2009) 556 U.S. 332, 351 (*Gant*).) When the occupant of a car is arrested for a "drug offense[ ]," it "will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." (*Id.* at 344; see also *People v. Evans* (2011) 200 Cal.App.4th 735, 750 (*Evans*) ["[A]bsent unusual circumstances, when a driver is arrested for driving under the influence, or being under the influence, it will generally be reasonable for an officer to believe evidence related to that crime might be found in the vehicle."].)

8

Leon relies heavily on a federal district court case from Tennessee, *United States v. Reagan* (E.D. Tenn. 2010) 713 F.Supp.2d 724 (*Reagan*). In *Reagan*, the court found it was not reasonable for the officer to believe there was evidence of the crime of driving under the influence of alcohol "inside the passenger compartment of a vehicle based solely upon the nature of the charge or the existence of evidence that the vehicle's driver is intoxicated." (*Id.* at p. 733.) According to *Reagan*, neither the driver's intoxication nor the officer's testimony that "he had sometimes discovered open containers of alcohol when searching some vehicles following the arrest of their drivers for DUI" was sufficiently particularized to support a reasonable belief that there was evidence of the offense in the defendant's car. (*Ibid.*)

Two California courts have discussed *Reagan* and have disagreed with this view. (See *People v. Nottoli* (2011) 199 Cal.App.4th 531, 553 [noting "*Gant* indicated that the nature of the crime of arrest was determinative" and thus finding an "arrest for 'being under the influence of a controlled substance' supplied a reasonable basis for believing that evidence 'relevant' to that type of offense might be in his vehicle"]; *Evans, supra,* 200 Cal.App.4th at p. 750 & fn. 9 ["part[ing] company" with *Reagan* and concluding "[i]t is certainly logical and reasonable to expect that items related to alcohol or drug consumption, such as alcoholic beverage bottles or drug paraphernalia, might readily be contained in the intoxicated driver's car"].) As applied to arrests for being under the influence of a controlled substance, we think these cases better comport with *Gant*, which itself suggests arresting a driver for a drug offense will support a search of the vehicle. (*Gant, supra,* 556 U.S. at p. 344; see also *People v. Quick* (2016) 5 Cal.App.5th 1006, 1012 ["In accordance with *Gant,* 'the focus of the inquiry is entirely upon the nature of the offense of arrest, rather than the particular facts of the case.' "].) There are no

9

circumstances here that would make it unreasonable to believe that Leon's car contained evidence. In fact, after they initiated the stop and activated their patrol car lights, the deputies observed Leon park, exit her car, quickly re-enter after they initiated the traffic stop, and reach over to the passenger's side. There was additional reason to believe that the passenger compartment contained evidence beyond the nature of the offense of arrest.

## DISPOSITION

The judgment is affirmed.


DO, J.

WE CONCUR:



O'ROURKE, Acting P. J.



IRION, J.

10