Filed 6/18/26  P. v. Mahaffey CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TYE GARRET MAHAFFEY,<br><br>    Defendant and Appellant. | 2d Crim. No. B346226<br>(Super. Ct. No. 2022030808)<br>(Ventura County) |

Tye Garret Mahaffey appeals a judgment following his conviction for identity theft.  (Pen. Code, § 530.5.)  He claims the trial court erred by denying his motion to suppress pursuant to Penal Code section 1538.5.  We conclude, among other things, that the police did not unlawfully prolong a traffic stop and the trial court did not err by denying appellant's motion.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

On November 28, 2022, the police received a call that there was a person in a white Ford Escape vehicle that was outside of a house known for drug activity in the past.

Sheriff deputy Justin Lopez responded to the scene and saw the vehicle leaving that area.

Lopez typed the license plate number of the vehicle into his computer which showed the registration for that vehicle had expired. The license plate had an orange 2023 "DMV sticker" on it which appeared to be fake or stolen. He conducted "a traffic enforcement stop."

Appellant, who was driving, stopped the vehicle. When Lopez asked him for his driver's license, appellant said "he didn't have his physical license on him," but he gave Lopez his driver's license number. Appellant gave Lopez his "registration paperwork."

About one minute into the stop, Lopez noticed appellant appeared to show "objective signs and symptoms" of a person who was under the influence of a controlled substance. Lopez asked appellant if he would take a drug-abuse recognition (DAR) evaluation to confirm whether he was under the influence of narcotics. Appellant refused multiple times.

Lopez conducted a records check which showed appellant's vehicle registration was current. He called for another officer to assist him at the scene. Officer Henry White arrived in five to seven minutes. At ten minutes after the traffic stop, Lopez asked appellant to get out of the car. Lopez arrested appellant about 15 minutes after the traffic stop for being under the influence of a controlled substance.

Following the arrest, deputies searched the vehicle and found a backpack containing a driver's license showing appellant's photo with a different first and last name on the card. The backpack also contained 62 "OxyContin counterfeit pills," a bag containing what appeared to be 1.8 grams of

methamphetamine, and heroin.  In a search of the trunk of the vehicle, deputies found four boxes of shotgun shells.  At the police station appellant admitted he was a convicted felon.

The People charged appellant with being a felon in possession of ammunition (Pen. Code, § 30305, subd. (a)(1); count 1), identity theft (*id.*, § 530.5, subd. (c)(1); count 2), possession of heroin (Health & Saf. Code, § 11350, subd. (a); count 3) and possession of methamphetamine (*id.*, § 11377, subd. (a); count 4.) Appellant pled not guilty.

Prior to the preliminary hearing appellant filed a motion to suppress pursuant to Penal Code section 1538.5.  At the preliminary hearing Lopez testified.  Appellant was held to answer and the motion was denied.  His renewed motion to suppress was denied.

Appellant thereafter pled guilty to count 2 identity theft, a misdemeanor, the other counts were dismissed.  He was placed on one year probation.

DISCUSSION

*Prolonged Detention*

Appellant contends the trial court erred by denying his section 1538.5 motion because he was "impermissibly detained past the time needed to handle the" investigatory traffic stop.  He claims he was unlawfully detained "after the responding officers determined that his vehicle registration was valid."

"[C]hallenged searches and seizures under the Fourth Amendment are ordinarily analyzed 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.' " (*People v. Ramirez* (2024) 104 Cal.App.5th 315, 329 (*Ramirez*).)  "An investigatory stop exceeds constitutional bounds when extended beyond what is

reasonably necessary under the circumstances that made its initiation permissible." (*People v. Russell* (2000) 81 Cal.App.4th 96, 101 (*Russell*).) "Circumstances which develop during a detention may provide reasonable suspicion to prolong the detention." (*Id.*, at p. 102.) "There is no set time limit for a permissible investigative stop; the question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly." (*Ibid.*)

"On review of denial of a suppression motion, we defer to the trial court's factual findings where supported by substantial evidence, but exercise independent judgment to determine whether, on the facts found, the search was reasonable under Fourth Amendment standards." (*Russell*, *supra*, 81 Cal.App.4th at p. 102.)

Lopez was an officer who had experience in identifying people who had used narcotics. Within one minute after the traffic stop, Lopez had reasonable suspicion to believe that appellant was impaired by being under the influence of narcotics. He testified that about a minute into the stop appellant's pupils "were extremely pinpointed," his lips were dry and "chappy," and appellant was nervous. He was sweating. His eyelids were "droopy" and his speech "was a little bit slurred and slow." His statements to Lopez became defensive. The fingertips on appellant's hands "were burnt and kind of dry which is typical . . . when individuals use methamphetamine, when they smoke the methamphetamine pipe." He was near a house known for repeated "drug activity."

Lopez told appellant about his "objective signs and symptoms" of intoxication and that "it could be dangerous" to "drive under those conditions."

4

Those objective signs of drug intoxication supported reasonable suspicion to continue the detention and prevent him from driving. (*Russell*, *supra*, 81 Cal App.4th at p. 102; *People v. Campuzano* (2015) 237 Cal.App.4th Supp. 14, 21 (*Campuzano*).) Because appellant did not have his driver's license, Lopez could "reasonably expand the scope of the stop" to verify his identity. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 927.) Because he believed appellant's car displayed a fake registration sticker, a criminal offense, (Veh. Code, §§ 4462, 4462.5), he could take additional time to investigate this issue.

Lopez decided to have appellant exit his vehicle because inter alia, he had been near a known "drug house." Given this location's criminal history, he could reasonably believe he had to proceed with caution. (*People v. Valle* (2024) 105 Cal.App.5th 195, 202-203 (*Valle*).) He requested an additional officer to come to the scene. It took officer White five to seven minutes to arrive there. Lopez testified the presence of the second officer was necessary for "officer safety." "Officer safety is a legitimate and important governmental interest to consider in Fourth Amendment analysis." (*People v. Hart* (1999) 74 Cal.App.4th 479, 490.) A " 'brief continuation of [the] detention for officer safety" is not unconstitutional. (*Ramirez*, *supra*, 104 Cal.App.5th at p. 327-328.) This five-to-seven-minute delay was not unreasonable. (*Valle*, *supra*, 105 Cal.App.5th at p. 201.)

After the second officer arrived, appellant got out of the vehicle. Lopez spent a total of 10 minutes making numerous efforts to get appellant to consent to take a DAR evaluation to determine whether he was under the influence of narcotics. Appellant repeatedly refused to engage in drug abuse evaluation testing. Lopez then placed him under arrest.

Appellant notes that before the police removed him from his car the police had confirmed that his registration was valid. He argues that because the reason for the traffic stop involved the registration, he should have been allowed to drive away after the police determined that his registration was valid.

But well before the police determined the validity of the registration, Lopez had reasonable suspicion to detain him one minute after the stop because of his objective signs of being under the influence which made him unsafe to drive. The determination that his registration was valid did not mean that it was safe for him to drive away. "[T]here was no prolonged detention because immediately after the stop and detention . . . the officer observed the defendant's objective symptoms of drug intoxication . . . ." (*Campuzano*, *supra*, 237 Cal.App.4th Supp. at p. 21.)

The traffic stop from "the point of initial contact to the point of arrest" was "about 15 minutes." This was not an unreasonably prolonged detention given the facts of this case. (*People v. Torres* (2010) 188 Cal.App.4th 775, 786; *United States v. Williams* (10th Cir. 2001) 271 F.3d 1262, 1271.)

*Unlawful Arrest*

Appellant contends his arrest was unlawful. We disagree.

Lopez had probable cause to arrest him. Appellant's objective physical symptoms of intoxication included slurred speech, droopy eyelids, pinpoint pupils, a nervous demeanor, sweating, dry lips, burnt methamphetamine type fingertips coupled with the fact he was leaving the area of a house known for repeated drug transactions. The combination of these factors supported probable cause to believe appellant was under the influence of a controlled substance. (*People v. Guajardo* (1994) 23

6

Cal.App.4th 1738, 1742-1743; *People v. Sanchez* (1987) 195 Cal.App.3d 42, 45, 48; *People v. Jones* (1987) 189 Cal.App.3d 398, 405-406.)  Moreover, his repeated refusal to take a drug test is "reasonably interpreted as a consciousness of guilt" given his intoxicated state, and it provided further "probable cause." (*Marvin v. Dep't of Motor Vehicles* (1984) 161 Cal.App.3d 717, 720; see also *People v. Zavala* (1966) 239 Cal.App.2d 732, 740.)

*Officer Lopez's Credibility*

Appellant contends Lopez's credibility was impeached by the bodycam video evidence.

On a motion to suppress, the trial court exclusively decides the credibility of the witnesses and resolves conflicts in the evidence.  (*People v. Tully* (2012) 54 Cal.4th 952, 979 (*Tully*); *People v. Woods* (1999) 21 Cal.4th 668, 673.)  Here the court found Lopez was credible and the bodycam evidence did not undermine his testimony.  It said, "you can't see from the body cam necessarily what the officer is seeing up at the scene."  There was a "disconnect" between "where the body cam is positioned versus where the officer's eyes are . . ."

These findings are supported by the record.  The bodycam video shows Lopez was in a closer and better position to directly see into the vehicle and observe appellant.  The side angle view from the bodycam did not provide such a direct view into the car. (See *State v. Harbach* (2024) 3 N.W.3d 209, 221-222.)  At times, part of the driver's side car door blocked part of the video view of appellant inside the car.  The trial court could reasonably decide to give greater weight to Lopez's testimony than the video evidence.  "Even though bodycam footage can be useful, courts should be careful in relying on the footage when determining specific facts that are not easily observable from the video."

7

(*Id.*, at p. 222.)  Moreover, the court saw Lopez testify and found him to be credible.  Appellant has not shown error.  (*Tully*, *supra*, 54 Cal.4th at p. 979.)

Appellant's remaining contentions do not support grounds for reversal.

DISPOSTION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

Russel-Paul H. Kawai, Judge

Superior Court County of Ventura

_____

Claudia Y. Bautista, Public Defender, William Quest, Deputy Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.